17151

ANNIE B. ANDERSON, Respondent, v. E. M. DAVIS and HELEN EDNA DAVIS, Appellants

(92 S. E. (2d) 469)

*Messrs. Joseph L. Nettles,* of Columbia, and *John K. de-Loach,* of Camden, *for Appellants,*

*Messrs. Murchison & West,* of Camden, *for Respondent,*

April 26, 1956.

LEGGE, Justice.

This action for personal injuries resulted from a collision between two automobiles. Appellants, who were defendants in the circuit court, base their appeal upon a single exception, to wit: that the presiding judge erred in refusing their motion for a directed verdict "upon the ground that the negligence of the plaintiff contributed to the collision", in that "such was the only reasonable inference to be drawn from the evidence and the applicable law". The complaint alleged that plaintiff's injuries were caused by the "negligent, wilful, wanton, reckless and unlawful" acts of the defendant Helen Edna Davis in the operation of the automobile of her husband, E. M. Davis—allegations appropriate to a

cause of action for punitive as well as actual damages. In addition to the general denial, the defendants pleaded contributory negligence, willfullness, wantonness, recklessness and unlawful conduct. The record indicates that the motion for direction of verdict was based upon contributory negligence, but not upon contributory willfullness as well; but in his order refusing the motion the trial judge considered it as embracing both contributory negligence and contributory willfullness. We shall therefore consider the exception as including both.

The accident occurred about 10:00 o'clock a. m., on Sunday, November 21, 1954, on U. S. Highway No. 1, about five miles north of Camden, South Carolina, in a fifty-five-mile speed zone. The two automobiles involved were both traveling southward, the Davis car following that of the respondent. The two-lane paved roadway at the place of the accident was twenty-six feet wide, and on either side of it was a surface-treated shoulder nine feet wide. From the place of the accident northward, the highway is straight for a considerable distance. There was no other traffic in sight. The weather was clear.

Respondent was driving her husband's car, a 1941 Plymouth. In the front seat with her was her husband; their three children were in the rear seat. It was their intention to go to the house of a Mr. Elliott, which is located some eighty-six feet east of the highway and is approached by means of a semi-circular driveway twenty feet wide, the two ends of which are ninety feet apart and connect with the eastern edge of the highway. The next house north of the Elliott house, on the same side of the highway, was at the time occupied by a Mr. and Mrs. Thompson and a Mr. Tiller, who boarded with them. The Thompson house is set back forty-one feet from the highway, and its driveway, twenty feet wide, is twenty-two feet to the south of the house and at right angles to the highway. About one hundred thirty-five feet north of the Thompson house, on the same side of the highway, is the Gardner house. From the

northern edge of the north entrance driveway of the Elliott property to the southern edge of the Thompson driveway, the distance along the highway is ninety-one and five-tenths feet.

Mrs. Davis was driving her husband's 1949 Lincoln, and her only passenger was her sister, Mrs. Orcutt. They were en route from Ohio, where they lived, to Florida.

Respondent testified that she was traveling about thirty-five miles per hour, and when she was about opposite the Thompson house she held out her hand, signalling her intention to make a left turn, and about the same time she saw in her rear-view mirror the Davis car, which was in the west lane and at that time had not reached the Gardner house, but was overtaking her. She did not look again into the rear-view mirror, but kept holding her hand out until just before she was opposite the north entrance driveway of the Elliott property, when she made the left turn. She testified that at some time after she had held her hand out she heard the squeal of tires as when brakes are applied; but she did not remember whether the squealing continued. She testified that she did not at any time pull over to the right of the road. The collision occurred at the mouth of the north entrance driveway of the Elliott property, the front wheels of respondent's car having entered the driveway.

Respondent's husband testified that as she put her hand out, the car being then abreast of the Thompson house, he heard the sound of brakes being applied, and, looking back, he saw the Davis car "about fifty or sixty steps" behind the Plymouth, and in the west lane of the highway. He estimated its speed at sixty or seventy miles per hour. According to his testimony, respondent was driving nearly in the center of the road until she was eight or ten feet north of the Elliott driveway, when she turned to enter it, and as she was making the turn her speed, which before had been about thirty-five miles, had been reduced to about five miles per hour.

Mrs. Thompson testified in substance as follows: She was standing at her front door when she heard the sound of brakes and skidding. The Plymouth was abreast of her house, and the driver was giving the hand signal. The Lincoln was between the Gardner house and the house north of it. The Plymouth was in the west lane until it made the turn to go into the Elliott driveway. Witness was unable to estimate the speed of either car, but stated that the Lincoln was overtaking the Plymouth. The driver of the Lincoln first applied brakes when her car was north of the Thompson house, then came over to the east lane, and when opposite the Thompson driveway put the brakes on hard and skidded to the point of collision in front of the Elliott driveway.

Following is, in brief, the testimony of Ray V. Tiller, a long-distance truck driver, who boarded in the Thompson home: He was in the front room when he caught a glimpse of the Plymouth as it was passing the house. Then, hearing the sound of brakes, he ran to the door and saw the Lincoln in the east lane of the highway, skidding by as if the brakes were locked. As the Lincoln was passing the Thompson house, the Plymouth was making its turn to go into the Elliott driveway, and he saw the driver's hand signal. He estimated the speed of the Plymouth, as it was passing the Thompson house, at twenty or twenty-five miles per hour, and that of the Lincoln at seventy-five or eighty. He testified that the Plymouth was in the west lane when it started to make the turn, and that it did not stop or pull over to the right before turning.

State Highway Patrolman Bennett, who arrived at the scene shortly after the accident, testified as follows:

In the vicinity of the north entrance driveway of the Elliott property, there is a ditch on either side of the highway. The ditch on the east side of the highway drains through a culvert under the driveway entrance. The Plymouth was lying on its right side in the ditch just south of the culvert, and was headed northward. The Lincoln, headed southward,

was partially in the driveway, the left front wheel being off the pavement. Principal damage to the Lincoln was on the right front; to the Plymouth, at the left rear wheel and fender. From a point on the east lane of the highway one hundred ninety-six feet north of the point of collision, skidmarks led to where the Lincoln had come to rest. These skidmarks were not very heavy where they began, but appeared heavier as they extended southward and toward the eastern edge of the highway.

Mrs. Davis testified as follows: When she first observed the Plymouth, it was about three hundred feet ahead of her car. Both cars were then in the west lane of the highway, and the speed of the Lincoln was forty-five miles per hour. The Plymouth slowed down and swerved slightly to the right, so that both of its right wheels were just off the road. As Mrs. Davis pulled to the left to pass, the Plymouth turned directly in front of her, not giving her sufficient room to pass on either side, and she was unable to avoid the collision. When the Plymouth was abreast of the Thompson house, the Lincoln being about a hundred and fifty feet behind it and having pulled over to the left and accelerated to pass, Mrs. Davis saw the driver of the Plymouth hold her hand out of the window briefly, but did not recognize it as a left-turn signal. She nevertheless began to apply her brakes, and applied them harder and harder until the collision took place. She estimated the speed of the Lincoln, after it had accelerated to pass the Plymouth, at fifty miles per hour.

Mrs. Orcutt, appellants' only other witness, testified that she did not see any signal given by the driver of the Plymouth; that the Plymouth was three or four car lengths in front of the Lincoln when the latter pulled out to pass; that the Plymouth, after having pulled to the right so that both right wheels were on the shoulder, turned to the left, whereupon the driver of the Lincoln, already in the east lane, applied brakes, but too late to avoid the collision. This witness estimated the speed of the Lincoln, before it accelerated to pass the Plymouth, at forty-five miles per hour.

Appellants contend that even under her own testimony respondent must be held guilty of contributory negligence and willfullness as a matter of law, especially since it clearly shows that she violated Sections 46-405 and 46-406 of the 1952 Code, which read as follows:

"46-405. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon a roadway as required in §§ 46-402 and 46-403 or turn a vehicle to enter a private road or roadway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

"46-406. No person shall turn any vehicle without giving an appropriate signal in the manner herein provided in the event any other traffic may be affected by such movement. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

The case is a very close one. Although respondent's testimony was to the effect that she gave the statutory hand signal for the required distance before making her left turn, she admitted that about the same time that she held out her hand for the signal she saw appellants' car, more than a hundred and thirty-five feet behind her and in the same lane, but overtaking her. In such a situation, her nonchalant reliance upon the hand signal alone, and her failure to keep the overtaking car under observation in order to make sure that her left turn could be safely made, was at least negligent as a matter of law, and might well have justified inference by the jury that it was a proximate contributing cause of the collision. On the

other hand the testimony of her other witnesses, particularly Tiller and Bennett, could have warranted the conclusion that the accident was proximately caused by Mrs. Davis' gross negligence and recklessness in driving at a speed so excessive as to have prevented her from heeding respondent's signal in time to avoid the collision. Under these circumstances the trial judge properly refused appellants' motion for a directed verdict, since mere contributory negligence of the respondent would not have been a defense to gross negligence and recklessness on the part of the appellants. *Marks v. I. M. Pearlstine & Sons,* 203 S. C. 318, 26 S. E. (2d) 835; *Dawson v. South Carolina Power Co.,* 220 S. C. 26, 66 S. E. (2d) 322. Except for the testimony, referred to above, concerning the speed of the Davis car, the trial judge might properly have directed a verdict in favor of the defendants; but it was his duty, in passing upon the motion, to consider the evidence in the light most favorable to the plaintiff's case, and because of the conflicting inferences of which the evidence to which we have referred was susceptible, we think that he properly submitted the factual issue, which essentially was of proximate cause, to the jury. *Culbertson v. Johnson Motor Lines,* 226 S. C. 13, 83 S. E. (2d) 338; *Scurry v. International Paper Co.,* 227 S. C. 392, 88 S. E. (2d) 256.

Affirmed.

STUKES, C. J., and TAYLOR and OXNER, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.