See also, D.C., 35 F.R.D. 567.

**Emmett F. SEITZ, as Ancillary Administrator of the Estate of Darrell Joe Seitz, Plaintiff,**

v.

**Allard A. HAMMOND, Defendant.**
**Civ. A. No. 3188.**

United States District Court
D. South Carolina,
Charleston Division.

March 7, 1967.

Arthur G. Howe, Charleston, S. C., for plaintiff.

Charles D. Powers, Wright, Scott, Blackwell & Powers, Florence, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This is an action for wrongful death brought by plaintiff as Administrator of the estate of his son, Darrell Joe Seitz, which resulted from a two car collision on March 15, 1963 about two miles north of the Town of Nichols on U. S. Highway 76 in Horry County, South Carolina, at about 8:45 p. m.

Jurisdiction of this court is predicated upon diversity of citizenship between plaintiff, a resident and citizen of Troy, Ohio, and defendant, a resident and citizen of South Carolina, with the amount in controversy exclusive of interests and costs exceeding the sum of $10,000.00.

Plaintiff's complaint alleges, and it is uncontested, that he has been duly appointed ancillary administrator of the estate of his deceased son by the Probate Court for Charleston County. The complaint further alleges that plaintiff's intestate on the occasion of the fatal accident was operating his Plymouth automobile in a westerly direction on U. S. Highway 76 in Horry County, South Carolina; that defendant was also operating his automobile in a westerly direction along the highway immediately in front of plaintiff's vehicle when he negligently and recklessly turned his vehicle to the left directly into the path of plaintiff's intestate's vehicle at the moment plaintiff's intestate was in the process of passing defendant's vehicle; that a collision occurred between the two vehicles forcing plaintiff's intestate's vehicle off the highway and into violent collision with a tree, resulting in fatal injuries to plaintiff's intestate. The complaint further asserts that plaintiff's intestate was in his twenty-second year of life, in good health, a loving and dutiful son, and that his statutory beneficiaries, his mother and father, have suffered "pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of his love and companionship and have been deprived of the use and comfort of the society of the

deceased, in addition to his ability to earn money to assist in the support, maintenance, and care of his parents", and prays for judgment against the defendant in the sum of $150,000.00, actual and punitive damages.

In his answer defendant pleads a general denial, and sole negligence and recklessness on the part of plaintiff's intestate. His answer also asserts the affirmative defense of contributory negligence and recklessness, and asks that plaintiff's complaint be dismissed with costs.

The case came on for trial before the court without a jury in the Florence Division of this Court on November 29, 1966. Subsequent to the trial counsel for the parties have submitted written briefs and arguments in support of their respective contentions. The court, having carefully reviewed the evidence and the briefs filed by counsel, makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. Plaintiff, a resident of the State of Ohio, has been duly appointed and is now the acting ancillary administrator of the estate of the deceased, Darrell Joe Seitz. The deceased was approaching twenty-two years of age at the time of his death on March 15, 1963, and under the Mortuary Table, Section 26–12 of the 1962 South Carolina Code of Laws, as amended, he had a life expectancy of 48.55 years. Defendant is a resident of Horry County, South Carolina. There is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.00.

2. At the time of his death plaintiff's intestate was serving in the United States Marine Corps stationed at New River near Jacksonville, North Carolina. He owned his own automobile, was self-supporting and furnished no support to his father, mother or other members of his family. His statutory beneficiaries for whom this wrongful death suit is brought under the provisions of Section 10–1951 of the 1962 South Carolina Code of Laws are his father, Emmett F. Seitz, the plaintiff herein, and his mother, Dorothy O. Seitz.

3. On March 15, 1963 at about 8:30 a. m. plaintiff's intestate was driving his Plymouth automobile in a westerly direction along Highway 76 in Horry County, South Carolina, near the Town of Nichols, at about fifty miles per hour in a fifty-five miles per hour speed zone. Seated in the middle front seat of his automobile was John W. Graves; Tom Matthews was on the right front, Thomas C. Corns and William J. Judy were on the rear seat. The weather was clear; the highway was dry, and there were no yellow lines or other limitation on passing at the spot where the collision occurred.

4. Just prior to the collision defendant had left the residence of a cousin, Ralph W. Hammond. He entered Highway 76, turned to his left and traveled in a westerly direction intending to go to the home of his uncle, P. P. Hammond, who lived some 300 yards away. As he proceeded along the highway at a speed estimated by him to range from thirty-five to forty miles per hour he was traveling in the same direction and in front of plaintiff's intestate's automobile which was overtaking him from the rear. As he approached the private driveway to the residence of his uncle located on the left side of the highway, he testified that he slowed the speed of his automobile and gave a blinker signal of his intention to make a left turn about 100 yards before he reached the turn-off; he further stated that he stopped when he arrived at his uncle's driveway to permit an on-coming car to pass. At that time he saw the Seitz automobile approaching from the rear in his lane of traffic at a rapid rate of speed. On cross-examination he admitted that before commencing to make the left turn he knew the car was coming up from behind at a speed estimated by him to be about the maximum speed limit. Nev-

ertheless, he attempted to make the left turn in the private driveway when he knew, or reasonably should have known, that such movement could not be made with reasonable safety.

5. The testimony substantiates that the Seitz car was in the process of passing the Hammond car as it was attempting to make a left turn at the time of impact. However, there is a sharp conflict in the testimony as to whether defendant gave any signal of his intention to make a left turn into his uncle's driveway prior to commencing his turn. Defendant and his witness, Mrs. Ralph W. Hammond, an eye witness to the accident from about 300 yards away, testified that defendant gave such signal by blinker light. Plaintiff's witnesses, John W. Graves and William J. Judy, who were occupants of the Seitz automobile at the time of the collision, testified that no signal whatever was given by defendant of his intention to make a left turn. They also deny that another automobile approached from the opposite direction and passed them just prior to the collision. They assert that defendant without any warning turned his car to his left to make a left turn into the private driveway at the moment the Seitz car in the process of passing had pulled to its left across the center of the highway into the left lane, and was about three-fourths of the way up beside defendant's car. The left rear portion of the Hammond car collided with the Seitz automobile on the latter's right side, causing it to leave the highway and hit a tree.

6. Tire marks and debris on the highway indicated that the point of impact was approximately two feet left of the center line. The tire marks apparently made by the Seitz automobile indicating a full application of its brakes commenced about four feet to the right of the center line and led across to the left of the highway for approximately thirty-one feet to the point of impact, and then on eighty-four feet to the point where it came to rest against the pine tree. The left rear door and fender of defendant's car were damaged. As a result of striking the tree, the Seitz car was a total loss making it difficult to determine what portion had been damaged in the collision with defendant's automobile. Plaintiff's intestate died immmediately after the collision as a result of the injuries received therein.

7. The only testimony produced by plaintiff as to how the accident occurred came from witnesses Graves and Judy who both stated that defendant's automobile was within their view from the time it entered the highway in front of them and that it proceeded along at a slow speed in a westerly direction prior to the accident. They further testified that plaintiff's intestate was driving his car from fifty to fifty-five miles per hour as he came up behind defendant's car, that he slowed his car somewhat, then turned to the left and had driven his car completely into the left lane and had almost passed defendant's car at the moment defendant attemped to make his left turn. The testimony of neither of these witnesses indicated that plaintiff's intestate sounded his horn before attempting to pass defendant's automobile, or that plaintiff's intestate applied his brakes prior to the time his car was fully in the lefthand lane and was almost even with defendant's car. Their testimony is inconsistent with the physical facts as indicated by the photographs in evidence and the patrolman's testimony, which established that the brakes on plaintiff's intestate's automobile were applied while all four of its wheels were still in its right lane of traffic. A strong inference is thus developed that plaintiff's intestate failed to keep a proper lookout, failed to have his automobile under proper control, and failed to reduce his speed sufficiently as he approached defendant's slow moving automobile, in order to avoid a collision. The evidence is also undisputed that defendant's automobile was damaged about the left rear fender and bumper which also commands the conclusion that plaintiff's intestate approached defendant automobile at a rapid rate of speed, and as borne out by the skid marks, applied his brakes while

still in the right lane, skidded his tires, turned to his left, and slid into the left rear portion of defendant's automobile. If the collision had occurred as testified to by plaintiff's witnesses Graves and Judy, that is that plaintiff's intestate's automobile was completely in the left lane and was three-fourths of the way past defendant's car at the moment the latter was turned to its left and into collision with the car in which they were riding, then the left front fender and bumper of defendant's car would necessarily have been damaged. The conflict in the physical facts and such testimony makes such testimony untenable.

8. Plaintiff, the father of the deceased, was the only witness offered who was in a position to substantiate the alleged damages suffered by plaintiff's intestate's beneficiaries, his father and mother, as a result of his wrongful death. Plaintiff's brief testimony (pages 3–7 of the Transcript) establishes that plaintiff's intestate was approaching his twenty-second birthday which was July 22, 1963; that he had been in the Marine Corps for three years, was self-supporting and did not contribute any support to his father, mother, three brothers and sister. However, Mr. Seitz did not testify or offer any evidence to substantiate the amount or extent of damages allegedly suffered by the parent-beneficiaries as set forth in the complaint which is quoted verbatim hereinabove. There is no positive testimony in the record to prove that the father and mother suffered any pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, and loss of the love and companionship of their son. Nevertheless, the court must assume from the circumstances and recognize that the father and mother did suffer some such loss from the untimely death of their son.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this action.

■ 2. The rights and duties of the parties are governed by the laws of the State of South Carolina, the place where the collision occurred.

■ 3. Defendant was guilty of negligence in the operation of his automobile on the occasion in question, regardless of whether he gave a left turn signal prior to his attempt to make his turn. From his own testimony he knew that plaintiff's intestate's automobile was approaching him from the rear at a rapid rate of speed sufficiently near that in the exercise of reasonable care it was his responsibility to keep the approaching car under close surveillance and not attempt to make a left turn until such movement could be made with reasonable safety. One intending to make a left turn who perfunctorily gives the requisite statutory signal of his intention to do so may not rely completely upon such signal, but must also keep a proper lookout for all other traffic upon the highway, and is not permitted by Section 46–405 [1] of the 1962 South Carolina Code of Laws to make a turn to enter a private roadway "until such movement can be made with reasonable safety."

■ In a factual situation quite similar to the facts presented here the South Carolina Supreme Court in Anderson v. Davis, 229 S.C. 223, 92 S.E.2d 469 (1956), stated at page 472:

"Although respondent's testimony was to the effect that she gave the statutory hand signal for the required distance before making her left turn, she admitted that about the same time that she held out her hand for the signal she saw appellants' car, more than a hundred and thirty-five feet behind

1. "§ 46–405. *General rule for turning movements.*—No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon a roadway as required in §§ 46–402 and 46–403 or turn a vehicle to enter a private road or roadway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

her and in the same lane, but overtaking her. In such a situation, her nonchalant reliance upon the hand signal alone, and her failure to keep the overtaking car under observation in order to make sure that her left turn could be safely made, was at least negligent as a matter of law, and might well have justified inference by the jury that it was a proximate contributing cause of the collision."

Under the circumstances of our case the conclusion is inescapable that defendant was guilty of a violation of Section 46–405, supra, which constituted negligence *per se*. Inasmuch as defendant was in the process of making the left turn in violation of said section and the point of impact occurred about two feet to the left of the center of the highway, such negligence was a concurring contributing proximate cause of the collision.

■ 4. It is also concluded that plaintiff's intestate was guilty of contributory negligence which was a concurring contributing proximate cause of the collision resulting in his untimely death. Section 46–361 of the 1962 South Carolina Code of Laws forbids any person from driving a motor vehicle upon the highway at a rate of speed that is greater than is reasonable and prudent under the conditions then and there existing, taking into consideration all actual and potential hazards. It further commands that "In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." Section 46–363 of the 1962 South Carolina Code of Laws also requires the driver of every motor vehicle to drive at an appropriate reduced speed when any special hazard exists with respect to other traffic. The common law rules of the road governing the operation of motor vehicles in this State also require the operator of all motor vehicles to have his vehicle under proper control and to keep a proper lookout so as to be able to slow down, stop or turn his vehicle in order to avoid colliding with other vehicles upon the highway. Plaintiff's intestate saw, or should have seen, defendant's automobile in the highway and proceeding ahead of him at a much lower speed than he himself was traveling; and, regardless of whether defendant gave a signal of his intention to turn left, he did bring his automobile to a stop and his brake lights were visible to the rear from the moment he first applied his brakes. Consequently, the court can only conclude that plaintiff's intestate, upon approaching defendant's automobile, should have reduced his speed sufficiently to be able to stop or turn in sufficient time to avoid colliding with the lead automobile even if the front car made a sudden turn to the right or to the left. In the exercise of due care one must recognize that an automobile which is reducing its speed or stopping is likely to make a turn, and a driver of an overtaking automobile under such circumstances, especially in the nighttime, should sound the horn to give notice to the driver of the lead automobile that he is about to attempt to pass him. Section 46–582 of the 1962 South Carolina Code of Laws.

■ 5. Under South Carolina law the contributory negligence of plaintiff's intestate which was a contributing proximate cause of the collision and all damages resulting therefrom bars any recovery by plaintiff. Gladden v. Southern Ry. Co., 142 S.C. 492, 141 S.E. 90 (1927).

■ 6. Neither plaintiff's intestate nor defendant was guilty of recklessness, wilfulness or wantonness.

In accordance with the foregoing findings of fact and conclusions of law plaintiff is not entitled to recover against the defendant, and plaintiff's complaint is hereby dismissed. The Clerk will enter judgment accordingly.

And it is so ordered.