17410

S. P. PADGETT, Respondent, v. COLONIAL WHOLESALE DISTRIBUTING COMPANY, Appellant

(103 S. E. (2d) 265)

594

*Messrs. Charles W. Knowlton,* and *Boyd, Bruton & Lumpkin,* of Columbia, *for Appellant,*

*Messrs. Henry H. Edens, Henry Hammer,* and *Terrell L. Glenn,* of Columbia, *for Respondent,*

April 9, 1958.

Moss, Justice.

This is an action brought by S. P. Padgett, the respondent herein, against the Colonial Wholesale Distributing Company, the appellant, to recover damages for personal injuries sustained on November 26, 1955.

The complaint alleges that the injury to the person of the respondent was directly and proximately caused by the negligent, careless, willful and wanton acts of the appellant in the operation of its truck. The complaint alleges that the truck was being driven at a rate of speed excessive under the circumstances and in violation of the statute law of this State; that the driver of said truck failed to have and keep same under control and to keep a proper lookout; and in failing to operate said truck with that degree of care which a reasonable and prudent person would have exercised under the circumstances. The appellant's answer was a general denial.

The case was tried before the County Court of Richland County and resulted in a verdict for the respondent for actual and punitive damages. At appropriate stages of the trial, the appellant moved for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial. These motions were refused by the trial Judge.

The questions raised by the motions so made are: (1) Was there evidence of negligence on the part of the appellant? (2) If there was evidence of negligence, were rspondent's injuries proximately caused thereby? (3) Was there evidence of willfulness? (4) Are damages recoverable for shock, fright and emotional upset when there is no physical impact?

Within due time the appellant served notice of intention to appeal to this Court. The exceptions of the appellant raise the same questions as are above stated.

It appears from the testimony that the respondent resides on U. S. Highway No. 21, in Lexington County, on the left-hand side of the road going towards Orangeburg from Columbia. The respondent testified that at approximately seven o'clock in the evening on November 26, 1955, he was seated in the front room of his home watching a television program. Suddenly he heard a terrible noise and there was a jarring of the residence. He testified that he got up and went to the front door and opened it. He found a wholesale liquor truck lying against the house. He testified that the impact of the truck with the house "broke off three or four of the asbestos shingles and knocked a hole on in through the wood". He also testified that he was in the yard after the accident for about two hours, either with the officers investigating the accident or in helping clean up the debris in the yard.

The respondent also testified that it was very cold on the night of the accident and that he almost froze from being exposed to the elements. He testified also that on the day following the accident that he was "taken to bed" and the latter part of the following week he commenced breaking out

with a rash. He describes his condition in the following language: "Well, I felt like I was in an ant bed. I just felt like I was in an ant bed. My skin swollen until it was so thick as a mule hide, all over my arms and my body and my back, and with all the rubbing and scratching I could do, I couldn't get any relief. I couldn't get no relief for it whatever. My wife and my children would rub and did the best to pacify me with all the scratching I could do, and with ice tags hanging on the outside of the house I was burning up with fever and perspiration. I was just burning up." The respondent also testified that at the time of the accident he weighed 210 pounds and at the time of the trial his weight was between 140 and 145 pounds, and that he had no appetite and was unable to work. He also says that he never had any skin ailment or rash prior to the accident. He says that the accident frightened him so that he "went all to pieces" and "got so nervous". The respondent testified that he went to several doctors for treatment of his skin ailment, and that some three months after the development of his trouble he went to a skin specialist. This specialist testified that he found the respondent suffering a generalized urticaria eruption and a neurodermatitis, involving the whole skin surface. This specialist also testified that from the history of the patient's case he found that a truck had run into his house, and from the shock of such incident he became very nervous. As a part of the history he found that the respondent had been exposed to the cold following the incident above described. He gave as his professional opinion that the shock and exposure were the cause of the respondent's skin trouble.

The appellant objected to and moved to strike out of the testimony the professional opinion of the physician on the ground that the emotional upset condition, shock and fright of the respondent could not be a basis of recovery unless there was tangible bodily injury inflicted upon him.

The driver of the truck of appellant was not available as a witness at the time of the trial. However, another employee of the appellant, who was riding in the truck at the

time of the accident, did testify. He said that the panel delivery truck of appellant was returning from Charleston to Columbia, proceeding at about 50 or 55 miles per hour, on a straight stretch of highway. He further testified that a tanker truck, with other vehicles behind it, was approaching from the opposite direction. This tanker truck suddenly commenced a left turn to enter the yard of the respondent and stopped in the path of the panel truck of appellant, blocking the right lane in which the truck of appellant was traveling. He further testified that in order to avoid colliding with the tanker truck, that appellant's driver swerved off the road to his right in an attempt to avoid a collision with the tanker truck. He says that the rear panel door flew open and struck the front of the Padgett house. On cross-examination he testified as follows:

"Q. You were going about 55 miles an hour you say? A. Yes, sir.

"Q. I believe that the truck speed permitted by the South Carolina law is 45 miles an hour, isn't it? A. Yes, sir.

"Q. Isn't that right? A. Yes, sir.

"Q. And you were going over the speed limit to start with, according to what you say, about ten miles an hour? That's right, isn't it? A. Yes, sir.

"Q. I believe there is a sign almost right there, or a little further back that says: 'Trucks 45, cars 55'. You've seen those driving your truck, haven't you? A. Yes, sir."

The first three questions can be considered together by determining whether or not there was evidence of negligence and willfulness proximately causing the injury to respondent.

The question of whether or not there was error in refusing appellant's motion for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light most favorable to respondent. *Cannon v. Motors Ins. Corp.,* 224 S. C. 368, 79 S. E. (2d) 369; *Fagan v. Tim-*

*mons,* 215 S. C. 116, 54 S. E. (2d) 536; *Critzer v. Kerlin,* 231 S. C. 315, 98 S. E. (2d) 761, and if the evidence is susceptible of only one reasonable inference, the question is no longer a question for the jury but one of law for the court, otherwise, the issue, or issues, becomes a question of fact for the consideration of the jury. *Taylor v. Atlantic Coast Line R. Co.,* 78 S. C. 552, 59 S. E. 641.

The appellant asserts that its motion for a nonsuit should have been granted when made because the respondent produced no evidence of any negligence or willfulness on the part of the driver of the panel delivery truck. It is unnecessary for us to decide whether the witnesses in behalf of the respondent testified to any acts of negligence and willfulness on the part of the driver of appellant's panel delivery truck, because if there was a deficiency of evidence, the appellant through its witnesses, supplied on direct and cross examination such deficiency. We must apply the rule heretofore announced by this Court in *Eargle v. Sumter Lighting Co.,* 110 S. C. 560, 96 S. E. 909, 911, where it was said:

"We have held in numerous cases that, even though a nonsuit should have been granted at the conclusion of plaintiff's testimony, yet, if the deficiency of evidence was supplied either on direct or cross examination of defendant's witnesses, neither a nonsuit nor a directed verdict could be granted at the conclusion of all the testimony. It is immaterial from whose witnesses—whether plaintiff's or defendant's—the evidence in support of an element of damage or of the cause of action or defense may come. Either party has the right to make out or to strengthen his case or defense on the examination of the witnesses of his adversary. And even if the defendant's motion had been specifically for a nonsuit as to punitive damages, and it had been granted, nevertheless, if sufficient evidence to carry that issue to the jury had been brought out on direct or cross examination of defendant's witnesses, it would have been the duty of the court to submit it to the jury."

The *prima facie* speed limit fixed by Section 46-362 of the 1952 Code of Laws of South Carolina permitted the operation of a motor vehicle at a speed of 55 miles per hour in the area where this accident occurred. However, it appears from the testimony that pursuant to Section 46-367 of the Code, the Highway Department had determined and declared a reasonable and safe *prima facie* speed limit of 45 miles per hour for trucks. Notice of such was given by the erection of an appropriate sign. It was admitted by the witness for the appellant that the speed limit at the place of the accident was 45 miles per hour and that he knew a sign so designating such speed had been erected. He admitted that the truck of appellant was proceeding in violation of the speed as limited by this sign. It thus appears that the appellant, by its own witness, supplied the deficiency, if such there was, in the testimony offered by the respondent as to negligence and willfulness on the part of the driver of the truck of appellant.

This Court has stated in *Chapman v. Associated Transport, Inc.,* 218 S. C. 554, 63 S. E. (2d) 465, 469, the following:

"The violation of an applicable statute is negligence *per se,* and whether or not such breach contributed as a proximate cause to plaintiff's injury is ordinarily a question for the jury. *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010; *Lawrence v. Southern Ry., Carolina Division,* 169 S. C. 1, 167 S. E. 839; *Dickson v. Inter-Carolinas Motor Bus Co.,* 161 S. C. 297, 159 S. E. 625."

In *Morrow v. Evans,* 223 S. C. 288, 75 S. E. (2d) 598, 601, this Court stated:

"Causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, willfullness and wantonness. *Lumpkin v. Mankin,* 136 S. C. 506, 134 S. E. 503; *Ralls v. Saleeby,* 178 S. C. 431, 182 S. E. 750; *Vernon v. Atlantic Coast Line R. Co.,* 221 S. C. 376, 70 S. E. (2d) 862."

The undisputed evidence given by the witness for the appellant is that the panel delivery truck was being driven in violation of the statute law and was exceeding the posted speed limit. We think that the trial Judge properly submitted the factual issue which essentially was one of proximate cause to the jury. *Anderson v. Davis,* 229 S. C. 223, 92 S. E. (2d) 469; *Culbertson v. Johnson Motor Lines,* 226 S. C. 13, 83 S. E. (2d) 338.

The appellant asserts that the accident would not have resulted but for the negligence of the driver of the tanker truck, and that such negligent acts of the third person were not reasonably foreseeable by the driver of appellant's truck. The appellant likewise says that had it not been for the negligence in the operation of the tanker truck, that its panel truck would not have been forced off the highway. This raised an issue of fact to be determined by the jury. There can be no question that the injury sustained by the respondent occurred while the negligence and willfullness of the appellant existed and continued.

The appellant asserts that the driver of its truck was faced with a sudden emergency and was compelled to act instantly to avoid a collision with the oncoming tanker truck. It is asserted that in so doing the appellant was not guilty of any negligence or willfullness.

In the recent case of *Melton v. Ritch,* 231 S. C. 146, 97 S. E. (2d) 509, 512, we said:

"In determining whether or not a person was justified in turning out to the left, the usual rules applicable to acts in emergencies generally apply. *Gilbert v. Lewisburg Ice Cream Co.,* 117 W. Va. 107, 184 S. E. 244. When the driver of an automobile is confronted with a sudden peril brought about by the negligence of another, he is not held to the exercise of the same degree of care as when he has time for reflection. If he has used due care to avoid meeting such an emergency and after it arises, he exercises such care as a reasonably prudent driver would use under the attendant circumstances,

he is not negligent. In *Porter v. Cook,* 196 S. C. 433, 13 S. E. (2d) 486, 488, the Court said: 'It is settled by a great body of decisions that an automobile driver, who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or an injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice.' As there pointed out, the question of whether such a person exercised due care under the circumstances is ordinarily one of fact for the jury."

In *Fisher v. J. H. Sheridan Co., Inc.,* 182 S. C. 316, 189 S. E. 356, 359, 108 A. L. R. 981, the Court said:

"The violation of a statute is sufficient to carry the issue as to punitive damages to the jury under proper instructions by the court and may warrant the inference of reckless, willful, or wanton conduct, but it is not obligatory as a matter of law to demand such a finding in every case where the question arises."

We think that the Court properly submitted to the jury the question of whether the appellant was guilty of negligence and willfullness, which proximately caused the injury to the respondent. We think the jury could reasonably infer that the appellant was negligent and willful in failing to keep a proper lookout, in failing to have his car under control, and in driving at an excessive rate of speed in violation of the posted speed limit. It should be kept in mind that the appellant asserts that the injury to the respondent was proximately caused and occasioned by the negligence of a third party. However, we should not overlook the well-settled principle that negligence or willfullness, to render a person liable, need not be the sole cause of an injury. It is sufficient to show that it is a proximate concurring cause. It was for the jury to determine whether the appellant was guilty of negligence and willfullness which was

a concurring proximate cause of the injury to respondent. *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534.

The appellant does not except to the trial Judge's charge to the jury in this case and such charge is not contained in the appeal record. We will, therefore, presume that the instructions given by the court to the jury were in line with the principles above set forth.

The only other question for determination upon this appeal is whether damages are recoverable for shock, fright and emotional upset when there is no physical impact. We have heretofore pointed out that the skin ailment suffered by the appellant, according to the testimony of the physician, was due to the shock and exposure suffered by the respondent as a result of the panel truck of the appellant striking his house. The appellant asserts, and the testimony shows, that there was no physical impact or tangible bodily injury to the respondent at the time of the accident. It is conceded by the respondent that under the law of this State damages cannot be recovered for mental suffering in the absence of bodily injury. *Norris v. Southern Railway, Carolina Division,* 84 S. C. 15, 65 S. E. 956; *Henry v. Southern Railway Co.,* 93 S. C. 125, 75 S. E. 1018. However, the respondent asserts that he is entitled to recover damages for the physical injuries which were sustained as a direct and proximate result of the fright, shock and mental distress caused by the negligence and willfullness of the appellant.

In the case of *Mack v. South Bound R. Co.,* 52 S. C. 323, 29 S. E. 905, 909, 40 L. R. A. 679, it appears that the plaintiff was endeavoring to get a mule off of the track of the railway company, and while so doing, a train approached, running at a rapid and reckless rate of speed. The plaintiff, in order to avoid injury, threw himself down along the cross ties just outside of the rail and barely escaped being struck by the locomotive and cars of the railway company. The complaint alleged that the plaintiff was terribly frightened, his nervous system was shocked, his mind was affected and partially destroyed, his reason unbalanced, and that he was

made ill and sick, and suffered great mental anguish and physical pain, arising from the shock to his system and the fright which he received. A verdict was had for the plaintiff. The trial Judge refused to charge the jury, at the request of the railway company, that it being admitted that there was no actual collision between the plaintiff and the defendant's train and no physical injury resulting from such a collision, the defendant is not responsible for the consequences of fright occasioned thereby. The Court, in affirming the judgment obtained by the plaintiff, had this to say:

"We are much impressed with the reasoning of the court in the case of *Sloane v. Southern California Ry. Co.* [111 Cal. 668], 44 P. [320] 322 [32 L. R. A. 193], in which the following language is used: "The real question presented by the objections and exception of the [appellant] is whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism. It is a matter of general knowledge that an attack of sudden fright, or an exposure to imminent peril, has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous, weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected. Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves, or the entire

nervous system, are thus affected, there is a physical injury thereby produced; and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind. * * * The mental condition, which superinduced the bodily harm in the foregoing cases was fright, but the character of the mental excitation by which the injury to the body is produced is immaterial. If it can be established that the bodily harm was the direct result of the condition, without any intervening cause, it must be held that the act which caused the condition set in motion the agencies by which the injury was produced, and is the proximate cause of such injury.' "

In the case of *Douglass v. Southern Railway*, 82 S. C. 71, 62 S. E. 15, 19, 63 S. E. 5, it was said:

"It seems to us that the doctrine laid down in the case of *Mack v. [South Bound R.] Co.*, 52 S. C. 323, 29 S. E. 905 * * *, completely covers this case: 'A railroad company is liable for damages for mental or physical injuries, sus· tained in consequence of fright caused by its negligence.' Of course the question is first submitted to the jury, was there negligence by the defendant? Second, was there mental or physical injuries sustained in consequence of fright caused by its negligence? The judge took great care to have the charge contain these principles of law. Having done so, there was no error. This exception is overruled."

The case of *Spaugh v. A. C. L. Railroad Co.*, 158 S. C. 25, 155 S. E. 145, 147, was an action where the plaintiff was returning to her home in Holly Hill from Florence by train. As a result of misinformation given by the agent of the Railway Company, the plaintiff was forced to go out into the rain at an intervening station in order to obtain other transportation to her home. The plaintiff's nervous system was injured and she was made sick as a result of the wrong information given her by the station agent. In disposing of an appeal by the Railway Company from a verdict in favor of the plaintiff, this Court said:

"According to our view of the evidence on the question of bodily injury, the proof was ample, and clearly establishes that the plaintiff did receive bodily injury. In order to receive bodily injury, it was not necessary that the plaintiff should lose a limb or receive a broken limb, or to have wounds inflicted on her body. Having her nervous system injured and being made sick, in the manner she testified, constitutes bodily injury, and for which she should be entitled to recover damages in proportion to such injury, provided the proof establishes negligence on the part of defendant's agent in misinforming the plaintiff or the plaintiff's husband, acting for her, as to the train schedules between the points in question, and such negligence caused the alleged injury complained of. In this connection we desire to state that in our opinion the testimony warranted the trial judge in submitting that issue to the jury. It is clear, also, that the appellant's position, that the plaintiff could not recover for mental suffering for the reason that there was no proof of bodily injury, cannot be sustained, for as we have shown, there is ample proof that the plaintiff suffered bodily injury. Suffering from a nervous breakdown, as a result of defendant's negligence, would support a verdict for the plaintiff, independent of any other injury she sustained. In support of the holding expressed, we call attention to the following cases: *Shepherd v. Southern R. Co.,* 135 S. C. 75, 133 S. E. 231; *Milhous v. Southern Ry.,* 72 S. C. 442, 52 S. E. 41, 110 Am. St. Rep. 620; *Taber v. Seaboard Air Line Ry.,* 81 S. C. 317, 62 S. E. 311; *Taber v. Seaboard Air Line Ry.,* 84 S. C. 291, 66 S. E. 292, 19 Ann. Cas. 1132; *Murrell v. Charleston & W. C. R. Co.,* 115 S. C. 228, 105 S. E. 350; *Entzminger v. Seaboard Air Line Ry.,* 79 S. C. 151, 60 S. E. 441; *Campbell v. Seaboard Air Line Ry.,* 83 S. C. 448, 65 S. E. 628, 23 L. R. A., N. S., 1056, 137 Am. St. Rep. 824."

We think that under the authorities above quoted, the trial Judge was correct in submitting to the jury the question of whether or not the respondent had

sustained physical or bodily injury as a consequence of the shock, fright and emotional upset experienced by him. If the respondent's bodily injury was proximately caused by the shock, fright and emotional upset as a result of the negligence and willfulness of the appellant, he was entitled to recover such damages as would compensate him for the injury so sustained.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.