## 19144

James E. CARTER, Respondent, v. BOYD CONSTRUCTION COM-
PANY and St. Paul Fire and Marine Insurance Company, of whom
St. Paul Fire and Marine Insurance Company is Appellant.

(178 S. E. (2d) 536)

*Messrs. Robinson, McFadden & Moore,* and *J. Means McFadden,* of Columbia, *for Appellant,*

*Messrs. Lee and Ball,* of Columbia, *for Respondent,*

January 4, 1971.

BUSSEY, Justice:

In this action for fraud and deceit the plaintiff Carter sought to recover both actual and punitive damages from Boyd Construction Company and St. Paul Fire and Marine Insurance Company. Such parties, for simplicity, will be referred to as Carter, Boyd and St. Paul. In the course of the trial the court granted a nonsuit as to Boyd, but refused motions by St. Paul for nonsuit and directed verdict. The jury returned a verdict in favor of Carter for $3,000.00 actual damages and the appeal is from the court's denial of St. Paul's motion for judgment *non obstante veredicto* or, in the alternative, for a new trial.

St. Paul first contends that there was a total lack of evidence that it made any statement or did any acts upon which plaintiff relied to his detriment and that, accordingly, it was entitled to a directed verdict. In considering this contention it is elementary that the evidence and all of the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. We, accordingly, state the facts and reasonable inferences from the evidence in the light of the foregoing principle.

Since, for the reasons hereinafter set forth, the case will have to be remanded for a new trial, we limit our review of the evidence to only the highlights which are essential to a disposition of the appeal. Boyd has been engaged in the construction of residences since 1952. Carter was a carpenter with a sixth grade education who, in one capacity or another, worked for Boyd from 1952 until after November

24, 1964, on which date Carter sustained an injury to one of his fingers while on the job. St. Paul was the compensation carrier for Boyd from 1961 to 1965. As a result of his injury, Carter filed a claim for Workmen's Compensation benefits, but St. Paul denied liability contending that Carter was a subcontractor and not an employee, and, hence, entitled to no benefits. While an informal conference was had with a single Industrial Commissioner, there has been no adjudication of his compensation claim or determination of whether, in fact, he was an employee or a subcontractor at the time of his injury. For the purpose of this litigation, however, we must assume that he was a subcontractor and entitled to no Workmen's Compensation benefits. St. Paul so contended before the Industrial Commission and would be *estopped* to now contend otherwise.

Prior to January 1956, Carter was an hourly wage employee of Boyd but at that time Boyd changed the status of Carter, insofar as Boyd's records were concerned, from that of employee to that of subcontractor. Accompanying the change Boyd required Carter to report and pay his own Social Security tax, and thereafter also deducted from Carter's pay sufficient money to pay the proportion of Boyd's premium on Workmen's Compensation insurance attributable to and calculated on the amount of money paid Carter for his services. While designated a subcontractor, Carter had no employees and while he did other carpentry work, he was principally a cabinet maker. At the time of his injury and for a year or more prior thereto, he was being paid for his cabinet work on a "per running foot" basis, rather than an hourly or job basis. He was also doing other carpenter work for Boyd, being paid therefor on an hourly basis.

Premiums paid to St. Paul by Boyd included the premiums deducted from Carter's pay by Boyd. St. Paul made periodic audits of Boyd's payroll and it is reasonably inferable that it knew, or at least should have known, that it was receiving a premium based on Carter's earnings, whatever his capaicty, and that Carter was designated on Boyd's records as a subcontractor.

It appears that Carter questioned whether or not he was fully protected for Workmen's Compensation benefits in case of injury but was assured by Mr. Darnell Boyd, proprietor of the construction company, that he was fully protected. On October 25, 1963, Mr. Boyd contacted Mr. E. B. Sample, State Agent for St. Paul, at its Columbia office, by telephone, and told Mr. Sample about Carter's situation and Carter's concern as to whether he was protected. In response to the telephone call, Sample wrote Boyd the following letter.

"This will confirm our conversation of this afternoon with reference to the question of 'would an individual employed as a cabinet maker at a payment of so much money per foot be considered a sub-contractor or an employee within the terms of the Workmen's Compensation Act?'

"The question of whether an individual is a sub-contractor or not in such a setup is a very close question. Basically, if the St. Paul Companies is collecting a premium for this man, then he would be considered an employee and as such would be covered under the Workmen's Compensation Act."

St. Paul's contention that it did not do or say anything upon which Carter relied to his deteriment is predicated on the fact that Carter apparently had no recollection of having seen the foregoing letter prior to his injury, and further testified that he did not recall having had any direct contact with St. Paul prior to his injury. It is clearly inferable, however, we think from all of the evidence that Mr. Boyd either showed the said letter to Carter, or a least communicated the contents thereof to Carter upon its receipt. That, perchance, no representation was made directly to Carter is not conclusive of the case. *Chisolm v. Gadsden,* 1 Strob. 220, 32 S. C. L., is authority for the following propositions. False and fraudulent representations may be made by actions as well as by words. He who makes use of another in a transaction calculated and intended to mislead is himself guilty of the deception. Any fraudulent conduct injurious to another is actionable. While most of our modern fraud and

deceit decisions have been predicated upon representations made directly to the injured party, we know of no decision which has even attempted to repudiate the sound principles laid down in *Chisolm, supra.*

"Fraud may be deduced not only from deceptive or false representations, but from facts, incidents, and circumstances which may be trivial in themselves, but decisive in a given case of the fraudulent design. It is a state of mind, dependent on intent, which is provable by circumstantial evidence. *Parham-Thomas-McSwain v. Atlantic Life Insurance Company,* 111 S. C. 37, 96 S. E. 697.

"If more than one reasonable inference may be drawn from the evidence, then the question of fraud is for the jury. *Thompson v. Bass,* 167 S. C. 345, 166 S. E. 346." *Cook v. Metropolitan Life Ins.* Co., 186 S. C. 77, 194 S. E. 636.

In our view, the evidence and the inferences reasonably deducible therefrom are sufficient to warrant submission of the case to the jury on the theory of actual fraud.

The insurance business is affected with a public interest and our former decisions have recognized the duty owed by an insurer and its agents to avoid representations which would mislead an applicant or an insured to his detriment. *Hinds v. United Insurance Company of America,* 248 S. C. 285, 149 S. E. (2d) 771, and cases therein cited. A Workmen's Compensation insurance policy by virtue of Code Sec. 72-408 is, in effect, made a contract or agreement between the insurer and the person or persons entitled to compensation benefits. Here, inquiry having been made by Boyd, the insured, at the instance of Carter with respect to his status as to Workmen's Compensation benefits, we think the insurer clearly owed the duty to avoid representations which would mislead either Boyd or Carter to the detriment of either.

> In a case of actual fraud, based upon representation, there are nine elements essential to recovery, which are: (1) a representation; (2) its falsity; (3) its

materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. See cases collected in West's South Carolina Digest, Fraud, Key No. 3.

While we are satisfied that there was no error in denying St. Paul's motion for judgment *non obstante veredicto,* we are of the view that there were errors in the jury instructions of the lower court and that the motion for a new trial should have been granted. We shall not attempt to discuss in detail each error or asserted error but will attempt to point out the principal errors in the charge and, at least to some extent, indicate appropriate charges upon the retrial of this case.

The trial court charged at length from a treatise in *Corpus Juris Secundum* certain generalities of law appertaining to fraud and that there were various kinds of fraud, including intrinsic fraud, moral fraud, constructive fraud, legal fraud, actual fraud, etc. He did not attempt, however, to define any of the various classifications of fraud which he mentioned; what their elements were; nor attempt to give any explanation of just what must be proved to support a recovery on one or another kind of alleged fraud.

Since there was no evidence of a representation being made by St. Paul directly to Carter, the court declined to charge the nine elements, mentioned above, which are essential to recovery in a case of actual fraud based on a misrepresentation. In this the court was in error. The fact that any representation by St. Paul was made through Boyd to Carter, rather than directly, would not change the applicable legal principles.

The jury was correctly instructed that in order for the plaintiff to be entitled to a verdict he was required to prove fraud by clear, cogent and convincing evi-

dence. Near the end of his charge, however, his Honor used language which could have been construed by the jury as meaning that fraud could be proved by a simple preponderance of the evidence. We doubt if the jury so understood it, but it would be well for such language to be avoided on a retrial.

His Honor's charge with respect to damages was far from accurate, and we think prejudicially erroneous.

Instead of discussing his charge in detail, we set forth what we deem to be the correct principles of law applicable to damages in the instant case. We quote the following from *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886:

"As a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss of injury actually sustained, and place him in the same position that he would have occupied had he not been defrauded. 24 Am. Jur., Section 217, page 47. The recovery is restricted in all cases to such damages as were the natural and proximate consequences of the fraud, and such as can be clearly defined and ascertained, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed."

See also 37 Am. Jur. (2d) 458, Fraud and Deceit, Sec. 342; *Bowen v. Johnson,* 252 S. C. 423, 166 S. E. (2d) 766.

In *Thomas* the measure of actual damages was held to be what the insured would have received had the policy been as represented. In the instant case, if fraud be established to the satisfaction of the jury, more difficulty is encountered in determining precisely what damages the plaintiff sustained which resulted directly, naturally and proximately from such fraud. Certainly Carter's injury and lost time, doctor's bills, permanent injury, etc. did not result directly, naturally or proximately from any fraud on the part of St. Paul. Should the jury conclude from the evidence that but

for fraud on the part of St. Paul the employment status of Carter would have been changed so that he would have been entitled to Workmen's Compensation benefits at the time of his injury, then it would seem to logically follow that the measure of actual damages would be the amount of benefits which he would have been entitled to on his Workmen's Compensation claim.

In an action for fraud and deceit punitive damages are warranted where the tort feasor knew the representation to be false, or where a false represresentation is recklessly made, as a positive assertion, without knowing or caring whether it is true or false. In the latter instance, liability for punitive damages is dependent upon whether the tort feasor was conscious, or chargeable with consciousness, of his wrongdoing. *Young v. Goodyear Service Stores*, 244 S. C. 493, 137 S. E. (2d) 578.

For the reasons hereinabove set forth, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.