George C. WHITTEN, Sr., Plaintiff,

v.

AMERICAN MUTUAL LIABILITY INSURANCE CO., Defendant.

Civ. A. No. 77–703.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 22, 1977.

Ryan L. Scott, Columbia, S. C., for plaintiff.

Ernest J. Nauful, Jr., Callison, Tighe, Nauful & Rush, Columbia, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

This matter is presently before the Court on the motion of defendant, American Mutual Liability Insurance Company (hereinafter "American Mutual"), to dismiss plaintiff's claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the complaint fails to state a claim upon which relief can be granted. In the alternative, defendant moves to strike certain allegations of plaintiff's complaint pursuant to FRCP 12(f).

Plaintiff sustained a compensable back injury under the South Carolina Workmen's Compensation Act on December 10, 1973, while employed by Galaxy Boat Manufacturing Co., Inc. Thereafter, plaintiff and American Mutual, as the workmen's compensation carrier for Galaxy, entered into an Agreement as to Compensation whereby defendant agreed to pay plaintiff the sum of sixty-three ($63.00) dollars per week as compensation for his injury from December 25, 1973, until terminated in accordance with the provisions of the South Carolina Workmen's Compensation Law, Section 72–1, *et seq.*, of the Code of Laws of South Carolina 1962 (Section 42–1–10, *et seq.*, of the Code of Laws of South Carolina 1976). This agreement was approved by the South Carolina Industrial Commission by its Notice of Award No. 8508 issued March 27, 1974.

American Mutual paid the temporary total disability payments to plaintiff from December 25, 1973, to September 8, 1975, at which time the compensation payments were stopped without an evidentiary hearing and approval of the Industrial Commission. Thereafter, a hearing was held on October 9, 1975, before Commissioner Sarah Leverette of the Industrial Commission, pursuant to an application by American Mutual to stop payment of compensation.

In her Opinion and Award filed January 21, 1976, Commissioner Leverette ordered the following:

IT IS, THEREFORE, ORDERED that the defendants, Galaxy Boat Manufacturing Company, Inc., as the employer and American Mutual Liability Insurance Company as the carrier, shall pay to the claimant, George C. Whitten, Sr., compensation at the maximum compensable rate of Sixty-three and No/100 ($63.00) Dollars per week from and including the date his disability began on December 17, 1973, to December 25, 1973, and from the date of the last payment made on September 8, 1975, until maximum healing was reached on October 3, 1975.

IT IS FURTHER ORDERED that the defendants shall pay to the claimant, George C. Whitten, Sr., compensation at the maximum compensable rate of Sixty-three and No/100 ($63.00) Dollars per week for a period of one hundred, twenty (120) weeks representing a forty percent (40%) permanent partial loss of use of his back.

Appeal was made to the Full Commission where plaintiff and defendants challenged the findings with respect to the percentage of disability, and employer-carrier asserted a maximum healing date of March 15, 1975, rather than October 3, 1975, as found by Commissioner Leverette. On appeal, the Full Commission, by order filed September 10, 1976, found that maximum healing had not been achieved and ordered reinstatement of temporary total benefits. The Full Commission's order provides in part:

IT IS ORDERED that the defendants shall resume within fifteen (15) days of this Order weekly compensation to the claimant in the amount of Sixty-Three ($63.00) Dollars for total disability from October 3, 1975, to September 10, 1976, and such weekly compensation shall continue until further order of the Industrial Commission.

IT IS FURTHER ORDERED that the defendants shall pay to the claimant weekly compensation of total disability in the amount of Sixty-Three ($63.00) Dollars for the period from December 10, 1973, to December 17, 1973.

On September 24, 1976, defendant's attorneys mailed three checks for payment pursuant to the Order of the Full Commission. These checks were received by plaintiff's attorney on September 27, 1976. A final check for the amount in arrears as determined by the Full Commission was received by plaintiff's attorney on October 12, 1976, and, as plaintiff's attorney concedes in his memorandum in opposition to defendant's present motion, "[t]his last payment paid all payments in arrears as ordered by the Industrial Commission."

Subsequently, on April 11, 1977, plaintiff filed a complaint in the Court of Common Pleas for Richland County averring, *inter alia,* and in essence, that from September 8, 1975, to September 27, 1976, defendant refused to make any compensation payments to plaintiff although plaintiff made numerous demands for the reinstitution of said payments; that plaintiff had no other source of income; that defendant willfully, knowingly, maliciously, recklessly, and negligently failed to make the compensation payments to which plaintiff had a right and for which defendant had an obligation to pay; that plaintiff was thus rendered incapable of securing the necessities of life and was thus caused to become nervous and upset and to suffer mental anguish and emotional distress, all to his damage in the amount of one million ($1,000,000.00) dollars. On April 19, 1977, defendant removed the case to this Court, and, on May 16, 1977, defendant filed its motion to dismiss.

■ It is well-settled that this Court, in considering a motion to dismiss for failure to state a claim upon which relief can be granted, must assume the truth of all material allegations of the complaint and must assume that said allegations will be sustained by competent proof at trial. Moreover, if any inference can be reasonably drawn to sustain plaintiff's cause of action, this Court cannot dismiss plaintiff's claim.

■■ Even with these precepts in mind, this Court is constrained to grant defend-

ant's motion to dismiss. As an initial proposition, it is this Court's belief that plaintiff's action should be construed as a suit for breach of contract in light of the fact that the non-payment of compensation monies by defendant was in violation of the Agreement as to Compensation executed by the parties on March 7, 1974. Consequently, under this construction, plaintiff's claim must be dismissed in light of the fact that the law of this state makes no provision for the recovery of damages for emotional distress or mental anguish resulting from breach of contract, no matter what the intent of the breaching party was in failing to fulfill its obligations.

Secondly, the provisions of the aforementioned agreement state that the payments shall be paid weekly "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of S. C." As noted hereinabove, this Agreement as to Compensation was approved by the South Carolina Industrial Commission by its Notice of Award No. 8508 issued March 27, 1974. Moreover, Section 72–352 of the 1962 Code (Section 42–17–20 of the 1976 Code) reads as follows:

If the employer and the injured employee or his dependents fail to reach an agreement in regard to compensation under this Title within fourteen days after the employer has knowledge of the injury or after a death or if they have reached such an agreement which has been signed and filed with the Commission and compensation has been paid or is due in accordance therewith and the parties thereto then disagree as to the continuance of any weekly payment under such agreement, either party may make application to the Commission for a hearing in regard to the matters at issue and for a ruling thereon. Immediately after such application has been received the Commission shall set a date for a hearing, which shall be held as soon as practicable, and shall notify the parties at issue of the time and place of such hearing. The hearing shall be held in the city or county in which the injury occurred, unless otherwise agreed to by the parties and authorized by the Commission.

This section of the Code certainly makes no provision for the stoppage of payments without approval by the Industrial Commission. Moreover, Rule 67–10 of the Commission provides in part as follows:

Compensation cannot be discontinued after an Award has been made or an agreement between the parties approved until the full Award has been paid, except as herein set forth. Disability will be presumed to continue until the employee returns to work. In the event the insurance carrier or employer desires to stop payment of compensation to the employee, the insurance carrier or employer shall file with the Commission a conditional waiver properly executed by the employee or a request for permission to discontinue compensation payments upon forms prepared by the Commission. The request shall set forth the reasons the insurance carrier or employer desires to discontinue compensation payments, and the request shall be accompanied by a proper medical certificate to certify that the employee is able to return to the same job or other suitable job, and that such job has been provided by the employer, or that the employee has refused medical treatment. The request shall also include evidence of service upon the employee, and his attorney if one be of record, by certified mail of the copy of the request.

Upon receipt of said application to stop payment of compensation, the Commission shall schedule the matter for a hearing which shall be held as soon as practicable.

\*   \*   \*   \*   \*   \*

The Commission shall not entertain any application or any waiver signed by the employee to terminate or suspend benefits unless and until the employer or carrier is current with all payments due.

*Halks v. Rust Engineering Co.,* 208 S.C. 39, 36 S.E.2d 852 (1946), holds that the aforementioned section of the Code and the above rule

contemplate that if the insurance carrier desires to stop further payment of compensation under a temporary award, application should be made to the Commission for permission to do so. Notice should be given to the employee. The question can then be determined by the Commission. Where there is a disagreement between the parties as to the right to discontinue further weekly compensation, the matter will be placed on the calendar for a hearing. If it is determined that the carrier is entitled to discontinue further payments of total temporary disability, the question of any permanent disability or disfigurement would then be ripe for determination. But apart from the foregoing requirements we do not think the right of a claimant to further compensation can be adjudicated without notice to him and an opportunity afforded for a hearing, if he desires to contest the issue.

■ The case of *Singleton v. Young Lumber Co.*, 236 S.C. 454, 114 S.E.2d 837 (1960), holds that the discontinuance of weekly compensation payments by the carrier in contravention of the compensation agreement without following the procedure outlined in the above-quoted section 72–352 would subject the employer and the carrier to the penalty provided for by § 72–159 of the 1962 Code (§ 42 -9 90 of the 1976 Code[1]).

As stated, the procedure outlined by § 72–352 and Rule 67–10 does not encompass the stoppage of payments prior to approval by the Commission. Therefore, what defendant has done in this case, assuming the allegations of the complaint to be true, is violate the approval order of the Industrial Commission regarding the compensation agreement. The proper remedy for such a violation is clearly provided for under the Act by way of the aforementioned § 72–159 or § 72–177 of the 1962 Code (§ 42–9–260 of the 1976 Code[2]).

Finally, the Full Commission's Order of September 10, 1976, stated the following:

In passing and to repeat, compensation payments were stopped in this case without an evidentiary hearing and approval of the Industrial Commission, and unless it is resumed within fifteen (15) days of this Order, appropriate action should be commenced concerning applying a twenty-five (25%) percent penalty to the unpaid payments from October 3, 1975.

In light of the foregoing, and in view of the fact that the carrier is in effect the "alter ego" of the employer (§ 72–407 of the 1962 Code, § 42–5–70 of the 1976 Code; § 72–408 of the 1962 Code, § 42–5–80 of the 1976 Code; § 72–422 of the 1962 Code, § 42–5–210 of the 1976 Code; *Carter v. Boyd Construction Co.*, 255 S.C. 274, 178 S.E.2d 536 [1971]; *Travelers Insurance Co.*

1. § 72–159 of the 1962 Code, § 42–9–90 of the 1976 Code:

If any installment of compensation payable in accordance with the terms of an agreement approved by the Commission without an award is not paid within fourteen days after it becomes due, as provided in § 42–9–230, or if any installment of compensation payable in accordance with the terms of an award by the Commission is not paid within fourteen days after it becomes due, as provided in § 42–9–240, there shall be added to such unpaid installment an amount equal to ten per cent thereof, which shall be paid at the same time as, but in addition to, such installment, unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

2. § 72–177 of the 1962 Code, § 42–9–260 of the 1976 Code:

Upon making the first payment the employer shall immediately notify the Commission, in accordance with a form prescribed by the Commission, that payment of compensation has begun.

The Commission shall provide by rule the method and procedure by which benefits may be suspended or terminated for any cause, but such rule shall provide for an evidentiary hearing and Commission approval prior to termination or suspension unless such prior hearing is expressly waived in writing by the recipient. Further, the Commission shall not entertain any application to terminate or suspend benefits unless and until the employer or carrier is current with all payments due.

Failure to comply with such rule as to termination or suspension of benefits shall result in a twenty-five percent penalty imposed upon the carrier or employer computed on the amount of benefits withheld without prior Commission approval.

*v. Allstate Insurance Co.,* 249 S.C. 592, 155 S.E.2d 591 [1967]; *Smalls v. Blackmon,* S.C., 239 S.E.2d 640 [1977]), this Court finds that the Workmen's Compensation Act provides plaintiff a full remedy against defendant American Mutual, and it would violate the policy if not the specific terms of the "exclusive remedy" provision of the Act (§ 72–121 of the 1962 Code, § 42–1–540 of the 1976 Code[3]) to allow plaintiff to pursue his claim in this Court.

Finally, assuming arguendo that plaintiff's claim is one sounding in tort for the intentional infliction of emotional distress, the result is the same. Concededly, the Supreme Court of the State of South Carolina has recognized that a claim for the intentional tort of assault and battery by an employer may be brought outside of the Workmen's Compensation Act. *Stewart v. McLellan's Stores Co.,* 194 S.C. 50, 9 S.E.2d 35 (1940). In *Stewart,* the manager of defendant's store maliciously struck and slapped the plaintiff on the right side of her face, resulting in plaintiff's being "greatly humiliated, outraged and embarrassed and dejected, and injured in her face and nervous system, and caused to suffer great pain and anguish of mind and body." The Court framed the question before it as follows:

. . . [D]oes the Workmen's Compensation Act of South Carolina provide an exclusive remedy in a case of the character before us now, in which the person who would be claimant under that act suffered no physical injury, which left no visible effect, and which did not cause the plaintiff any actual physical pain, but in which other things were done which entitled him to some remedy?

The Court then noted the various compensable injuries provided for by the Act and found that the Act nowhere provides for an injury which leaves no physical disability or loss. Therefore, the Court concluded that there is no ground for action under the Workmen's Compensation Act where no physical disability has been suffered by the claimant. Moreover, the Court stated that an intentional and malicious assault and battery by an employer on an employee is not an "accident" under the Act for which compensation may be had. Thus, because the tort involved was intentional, and not an accident, and because no disability resulted, the Court held that the Act provides no remedy, and, therefore, the plaintiff's common law cause of action could not be dismissed.

Though the *Stewart* case would appear at first glance to allow a claim at common law for an intentional tort such as is alleged in the present case, it is not controlling in the instant case. As previously discussed, the Workmen's Compensation Act of South Carolina does indeed specifically provide a remedy by way of the penalty provisions for any interests violated as a result of the wrongful discontinuance of compensation payments, regardless of whether or not the discontinuance was willful or accidental and regardless of whether or not the claimant suffered any injury, be it physical, mental, or not at all. Thus the Supreme Court's decision in *Stewart,* based upon the determination that the act of the employer was not accidental and the injury of the plaintiff resulted in no disability and thus no remedy was available under the Act, would not control here because a remedy is specifically provided by the Act for the action of the defendant herein, despite the fact that it might be inferred and plaintiff might be able to prove that defendant's action in the present case was similarly not accidental

---

3. § 72–121 of the 1962 Code, § 42–1–540 of the 1976 Code:

The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

Provided, however, this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against other subcontractor or his employees when both subcontractors are hired by a common employer.

and similarly resulted in no compensable disability.

The final reason that defendant's motion in the instant case must be granted, despite the *Stewart* case, is that neither the Supreme Court nor the Legislature of the State of South Carolina has seen fit to create a cause of action for the intentional or malicious infliction of emotional distress without accompanying bodily injury or illness. The South Carolina Supreme Court has been confronted on two recent occasions with appeals from suits seeking damages for the infliction of emotional distress. In *Rhodes v. Security Finance Corp. of Landrum,* 268 S.C. 300, 233 S.E.2d 105 (1977), plaintiff sought actual and punitive damages for emotional distress resulting from the forgery of the signature of the plaintiff, as maker of a note in the amount of $196 payable to the defendant, and from the subsequent attempt by defendant to collect on the note. The forgery was discovered by other agents of the defendant when they attempted to collect the note. The Court described the circumstances and their impact on the plaintiff as follows:

> . . . The appellant, a person easily upset, suffered some emotional distress from the attempt of respondent to collect the note, but there was no loss of time from work or medical consultation because of the incident. Other than the fact that the note was a forgery, there were no unusual or aggravating circumstances surrounding the attempts to collect. When it was found that the note was a forgery, efforts to collect ceased.

The trial judge granted defendant's motion for judgment notwithstanding the verdict, and plaintiff appealed. In affirming, the Supreme Court held as follows:

> We have recognized the rule that there is no liability for emotional distress without a showing that the distress inflicted is extreme or severe. *Padgett v. Colonial Wholesale Distributing Company,* 232 S.C. 593, 103 S.E.2d 265; *Turner v. A B C Jalousie Company,* 251 S.C. 92, 160 S.E.2d 528.

> While there is testimony that appellant was emotionally upset from the attempt to collect the forged note, there is no showing that the attempts by respondent's agents to collect were unreasonable or abusive, nor that appellant's emotional upset was other than transient and trivial.

> The trial judge properly held that there was no evidence to sustain recovery by appellant.

The key sentence for our purposes is the statement that, "[w]e have recognized the rule that there is no liability for emotional distress without a showing that the distress inflicted is extreme or severe." As authority for this proposition, the Court cites the *Padgett* and *Turner* cases, *supra.* In both of these cases, the emotional distress was accompanied by some manifestation of physical injury or illness. In *Padgett,* defendant's truck left the road and rammed into plaintiff's house while he was watching television. Plaintiff went into the yard after the accident for about two hours to assist in the investigation and to clean up debris in the yard. The accident occurred in late November, and the night was cold. The following day, plaintiff became ill, and the following week he broke out in a severe rash. Plaintiff testified at trial that his weight had dropped from 210 pounds at the time of the accident to between 140 and 145 pounds at the time of trial, that he had no appetite and was unable to work, and that the accident frightened him so that he "went all to pieces" and "got so nervous". A skin specialist testified at trial that the shock of the accident and the exposure to the elements were the causes of plaintiff's skin problem. The opinion of the Court provided in part the following:

> The only other question for determination upon this appeal is whether damages are recoverable for shock, fright and emotional upset when there is no physical impact. We have heretofore pointed out that the skin ailment suffered by the appellant, according to the testimony of the physician, was due to the shock and exposure suffered by the respondent as a result of the panel truck of the appellant

striking his house. The appellant asserts, and the testimony shows, that there was no physical impact or tangible bodily injury to the respondent at the time of the accident. It is conceded by the respondent that under the law of this State damages cannot be recovered for mental suffering in the absence of bodily injury. *Norris v. Southern Railway, Carolina Division*, 84 S.C. 15, 65 S.E. 956; *Henry v. Southern Railway Co.*, 93 S.C. 125, 75 S.E. 1018. However, the respondent asserts that he is entitled to recover damages for the physical injuries which were sustained as a direct and proximate result of the fright, shock and mental distress caused by the negligence and willfulness of the appellant.

\* \* \* \* \* \*

We think that under the authorities above quoted, the trial Judge was correct in submitting to the jury the question of whether or not the respondent had sustained physical or bodily injury as a consequence of the shock, fright and emotional upset experienced by him. If the respondent's bodily injury was proximately caused by the shock, fright and emotional upset as a result of the negligence and willfulness of the appellant, he was entitled to · recover such damages as would compensate him for the injury so sustained.

From the foregoing, it is clear that the Court did not espouse a right to recover for emotional distress without bodily injury. Indeed, plaintiff conceded that no such cause of action inured to his benefit. The suit was brought for *bodily injury* proximately caused by shock and emotional upset resulting from defendant's negligence. Thus the case would indicate that the words "extreme" and "severe" describing the degree of distress required to be shown under the *Rhodes* case must encompass no less than some physical manifestation of bodily injury or illness resulting from the emotional distress. Plaintiff, in the instant case, has alleged no such bodily injury or illness.

From the *Turner* case, the same conclusion must be drawn. In this case, an agent

of defendant allegedly offered to sell and install aluminum siding to the house of plaintiff and her husband. Plaintiff and her husband then signed a contract with defendant for a price of $530. The agent then left the house only to return an hour later to inform the plaintiff and her husband that the cost would be $2,800. Plaintiff and her husband refused to enter into a new contract at the increased price and informed the agent that the whole deal was off due to the misrepresentations of the agent as to the quality of siding available at the lower price. The remaining relevant portions of the opinion read as follows:

. . . It is then alleged that the said agent immediately became enraged and in a loud and threatening voice, and with vile, profane and abusive language, threatened to bring suit against the respondent and her husband, sell their said dwelling house and throw them and their children into the street.

It is further alleged that as a direct and proximate result of the willful, wanton and malicious conduct of the agent of the appellant that the respondent became greatly frightened and terrified, went into shock, and her nervous system collapsed, necessitating hospital and medical care and treatment, thereby incurring medical expense and since said time has been in a highly nervous state and condition and will continue to suffer in the future from said nervous condition, resulting in loss of time from her employment and inability to perform her duties in the usual manner.

\* \* \* \* \* \*

Since it is alleged in the complaint that the tortious conduct of the appellant brought about the physical or bodily injury to the respondent, such states a cause of action and is good against a demurrer. The question of whether the respondent can prove her case against the appellant will be determined from the evidence produced upon a trial of the cause.

As is evident from the foregoing discussion, the Court sustained the trial judge's overruling of defendant's demurrer because

plaintiff's complaint specifically alleged physical or bodily injury resulting from the mental anguish caused by the conduct of defendant's agent. Again, such is not the case in the instant action. Therefore, as stated, the words "extreme" and "severe" describing the degree of distress required to be shown under the *Rhodes* case must encompass no less than some physical manifestation of bodily injury resulting from the emotional distress.

Since plaintiff's complaint in the instant case alleges no physical injury, but merely alleges that defendant's actions caused "plaintiff to become nervous and upset and to suffer indescriable [sic] mental anguish and extreme emotional distress," defendant's motion must be granted.

The second recent case referred to above wherein the South Carolina Supreme Court was confronted with a claim for the infliction of emotional distress does not change the conclusion of this Court that the law of South Carolina requires some physical manifestation of bodily injury or illness. In *Bellamy v. General Motors Acceptance Corporation and Alfred Anderson*, S.C., 239 S.E.2d 73 (1977), plaintiff had recently suffered a heart attack from which he was recuperating at home when Anderson, a representative of GMAC, entered plaintiff's home for the purpose of collecting an outstanding payment allegedly owed by plaintiff to GMAC. The Court's recitation of the remaining relevant facts is as follows:

Mr. Bellamy testified that he began to feel distressed immediately after Mr. Anderson's initial demand for payment, but he nevertheless asked Mr. Anderson to sit down so the matter could be straightened out. Mr. Bellamy felt progressively worse and informed Mr. Anderson of his heart condition and his need to avoid stressful situations. After approximately five minutes Mr. Bellamy asked Mr. Anderson to leave the house and come back later. By this time Mr. Bellamy was visibly distressed and had taken medication for the pain. Mr. Anderson ignored this and one other request by Mr. Bellamy to leave, and continued to demand the disputed payment. Mrs. Bellamy then intervened and told Mr. Anderson, "You have got to go because he can't take anymore." Mr. Anderson argued briefly with Mrs. Bellamy and then left. The entire encounter lasted from fifteen to twenty minutes.

Mr. Bellamy's condition worsened after Mr. Anderson left and he was carried to the hospital that night. His personal physician admitted him to the intensive care unit of the hospital where he remained for several days.

In affirming the trial court's denial of defendants' motions for directed verdict, involuntary non-suit, and judgment n. o. v., the Supreme Court held as follows:

Here, Mr. Anderson's conduct in the Bellamy home was clearly unreasonable and abusive, and the severity of Mr. Bellamy's suffering was conceded by appellants.

Viewing the evidence and all inferences reasonably deducible therefrom in the light most favorable to respondent, Mr. Anderson's conduct was sufficiently willful, wanton and malicious to warrant submitting the case to the jury. *Turner v. ABC Jalousie Company of North Carolina*, 251 S.C. 92, 160 S.E.2d 528 (1968).

Although Mr. Anderson was justified in making his initial demand for payment, his refusal to leave the Bellamy home when requested and his continued demands in disregard of Mr. Bellamy's visible distress rendered his conduct tortious.

Again, it is clear that the conduct causing emotional distress to the plaintiff resulted in a physical manifestation of bodily illness. The present plaintiff makes no such allegation in his complaint, and this Court finds that no reasonable inference of physical injury or illness can be drawn from plaintiff's averment of mental anguish and emotional distress allegedly caused by defendant's refusal to make the compensation payments. This Court's conclusion that plaintiff has stated no recoverable claim is reinforced by the fact that the present defendant's alleged action and/or inaction recited in plaintiff's complaint in no way approaches

the outrageous conduct of the defendant as described by the Court in the *Bellamy* case. It must be noted that even under the definition provided by the *Restatement of Torts 2d* § 46 of the tort of "Outrageous Conduct Causing Severe Emotional Distress",[4] there is by definition a requirement of extreme and outrageous conduct, even though the *Restatement's* definition of the tortious infliction of emotional distress does not require a manifestation of bodily injury as is the case under the law of South Carolina in the view of this Court for the reasons set forth hereinabove. The present defendant's alleged conduct does not approach the "outrageous" standard as this Court interprets that requirement from a thorough analysis of the cases discussed herein and the "Comment" to the *Restatement of Torts 2d* § 46 which reads as follows:

> d. Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Thus, even if the law of South Carolina does not require bodily injury or illness as a prerequisite to recovery for the infliction of emotional distress, as is the *Restatement's* conclusion, the conduct alleged herein would not come within the meaning of "outrageous" as provided by the *Restatement* or the aforementioned South Carolina cases. Thus, on the basis of this additional ground, plaintiff has not stated a claim upon which relief can be granted.

In conclusion, this Court is convinced from its analysis of the foregoing authorities that an allegation of bodily injury or illness must be made before the courts of the State of South Carolina would allow a plaintiff recovery for the infliction of emotional distress. Plaintiff's complaint herein fails to meet that requirement and furthermore does not allege any "outrageous" conduct as that term has been interpreted. Therefore, plaintiff's allegations do not establish a claim upon which recovery can be had under the substantive law of South Carolina which this Court is bound to follow under the holding of *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Moreover, this Court does not believe that the Supreme Court would allow recovery for the infliction of emotional distress without accompanying physical injury or illness, nor would it lower the threshold for outrageous conduct if confronted with such an opportunity in the future in view of the speculative nature of such an injury. In addition, there is a tradition and practice of the courts of this state to sort out and dismiss as quickly, yet as fairly, as possible those actions that do not state a proper, recoverable claim, so that the time and resources of the already overburdened judiciary will not be needlessly expended to the detriment of those persons seeking redress for real and compensable wrongs. This is particularly true in cases such as the present one. The Legislature of this State has provided an adequate and exclusive remedy under the Workmen's Compensation Act and its penalty provisions.

---

**4.** § 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is hereby granted. Defendant's alternative motion to strike is moot and the same is hereby denied.

IT IS, THEREFORE, ORDERED that plaintiff's complaint be and the same is hereby dismissed.

AND IT IS SO ORDERED.