1945

Patricia A. HAWKINS v. John GREENE, M.D., Respondent.
(427 S.E. (2d) 692)

Court of Appeals

*David B. Butler*, of *Cooper, Register & Butler*, Lexington, *for appellant*.

*William L. Pope*, of *Pope & Rodgers*, Columbia, *for respondent*.

Heard Jan. 25, 1993.

Decided Feb. 16, 1993.

SHAW, Judge:

Appellant, Patricia A. Hawkins, brought this action against respondent, John Greene, M.D., for intentional infliction of emotional distress. The trial judge granted Dr. Greene's motion for summary judgment and Hawkins appeals. We affirm.

The record reveals the following facts. In the early morning hours of May 5, 1989, appellant arrived at Newberry Memorial Hospital and, at approximately 8:05 a.m., gave birth to a premature infant. Dr. Greene, appellant's pediatrician, arrived shortly after the delivery, at which time he was informed by Dr. Floyd, appellant's obstetrician, that the child was nonviable and unable to sustain life. The child was administered oxygen for approximately 25 minutes in an attempt to elicit some respiratory response but his respiratory condition remained unchanged and his heart rate decreased, therefore the respondent ordered the resuscitative efforts to stop. The respondent carried the child to the nursery, at which time he

had no perception that the child's heart was beating at all. He carried the child back to the delivery room and, perceiving no signs of activity in the child, gave the baby to the nurses and instructed them to hold him while he talked to the appellant. While the child continued to display some beating of the heart, the respondent considered this beating a physiologic muscle function that the heart often has beyond the termination of life function. There is some discrepancy as to what the respondent told the appellant at this time but it is undisputed that he indicated that her baby was in fact dead.

Over the course of the next few hours, the child's heart rate and respiration increased and, upon notification, the respondent instructed the nurses to place him under a radiant warmer and to begin giving him oxygen again. He then arranged for a transport team from Richland Memorial Hospital to transfer the baby to the Neonatal Intensive Care Unit. The respondent then informed the appellant that her baby was in fact alive and requested permission for the transport.[1] The baby has survived with normal development and there is no allegation that respondent's actions resulted in any injury to the baby.

The trial judge granted respondent summary judgment on appellant's action for intentional infliction of emotional distress finding the evidence of respondent's conduct did not rise to the necessary level of extreme and outrageous behavior exceeding all bounds of decency, atrociousness or utterly intolerable behavior as to subject him to liability. He further found there was no evidence the respondent intentionally or recklessly caused appellant unnecessary emotional distress and found his actions and statements were based on the good faith belief that the baby was incapable of sustaining life on his own and that his death was imminent.

The tort of intentional infliction of emotional distress, or outrage, was first recognized by the South Carolina Supreme Court in *Ford v. Hutson*, 276 S.C. 157, 276 S.E. (2d) 776 (1981). The Supreme Court adopted the rule of liability stated in § 46 of the *Restatement (Second) of Torts* (1965), and listed the following four elements which a plaintiff

---

[1] Appellant contends, but the respondent denies, that the appellant made her aware of this by stating, "The funniest thing has happened—your baby is alive."

must establish in order to recover: (1) The defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it. 276 S.C. at 162, 276 S.E. (2d) at 778 (1981).

Initially, the question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery is one for the court, and only where reasonable persons might differ is the question one for the jury. *Holtzcheiter v. Thomson Newspapers, Inc.,* — S.C. —, 411 S.E. (2d) 664 (1991). Where evidence is undisputed that the defendant acted in good faith and in a reasonable manner, his conduct cannot be characterized as so extreme and outrageous as to exceed all possible bounds of decency and atrocious and utterly intolerable in a civilized community. *Manley v. Manley,* 291 S.C. 325, 353 S.E. (2d) 312 (Ct. App. 1987). Facts which may show extreme insensitivity on the part of the defendant do not necessarily establish the tort of outrage. *Roberts v. Dunbar Funeral Home,* 288 S.C. 48, 339 S.E. (2d) 517 (Ct. App. 1986).

There is no evidence in the case at hand that the respondent acted intentionally or recklessly to inflect severe emotional distress upon the appellant. Appellant put forth no evidence that respondent's actions in indicating the baby was dead under the circumstances were intentional or reckless and, in fact, from the record, appear to be reasonable. Further, his actions do not appear to have been "so extreme and outrageous as to exceed all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community." Accordingly, we find summary judgment was proper and therefore affirm the order below.

Affirmed.

GARDNER and BELL, JJ., concur.