2216

Evangeline STRICKLAND, Appellant v. Arthur MADDEN, M.D. and Providence Hospital, Respondents.

(448 S.E. (2d) 581)

Court of Appeals

*Howard Hammer* and *Henry Hammer,* of *Hammer & Hammer;* and *Scott Elliott,* Columbia, *for appellant.*

*Edwin P. Martin, Linda W. Rogers,* and *Teresa Arnold Clemenz,* of *Turner, Padget, Graham & Laney* and *Harold W. Jacobs,* of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *for respondents.*

Heard May 11, 1994.

Decided Aug. 15, 1994; Reh. Den. Oct. 5, 1994.

*Per Curiam:*

Evangeline Strickland brought this action against Arthur Madden, M.D. and Providence Hospital seeking to recover for emotional and physical injuries suffered when Dr. Madden informed Strickland her father had died when in fact he was alive. The trial court granted summary judgment in favor of Madden and Providence Hospital. Strickland appeals. We affirm in part, reverse in part and remand.

In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in a light most favorable to the nonmoving party. *Davis v. Piedmont Engineers, Architects and Planners, P.A.,* 284 S.C. 20, 324 S.E. (2d) 325 (Ct. App. 1984). We therefore recite the facts most favorable to Strickland.

Strickland's eighty-two-year-old father was admitted to Providence Hospital, complaining of weakness and having trouble breathing and retaining fluids. Three or four days later, on September 6, 1990, Strickland's father became critically ill. A team of hospital personnel and staff sought to revive him, and Strickland and her brother, Seamon Hunter, were asked to go to a waiting room.

About 45 minutes after Strickland and Hunter went to the waiting room, Dr. Madden[1] entered gesturing with his thumbs pointing down. Strickland asked Madden what he meant, and

---

[1] Dr. Madden was on call for Dr. Gottlieb, the primary physician of Strickland's father.

Madden told them their father had died. Strickland and Hunter described Madden's demeanor as jovial and entirely inappropriate under the circumstances. Hunter described Madden's speech as being slurred. Additionally, Madden chided Strickland and Hunter for insisting upon the revival of their father and stated that they were fortunate their father had lived a long life.

It was only after Strickland had summoned other members of the family, her father's pastor, and close friends to the hospital that a hospital nurse told her Madden had misinformed them and that her father was alive.[2]

Strickland is a retired former records department employee of Providence Hospital. She no longer worked at the hospital at the time these events occurred. During the years she worked at Providence, Strickland became aware of rumors that Madden had a drinking problem. She personally recalled one incident when Madden appeared to be impaired while in the records room at the hospital.

Sister Mary Jacob Yelcho, now retired, was President of the hospital at the time in question. She recalled nursing supervisors twice reported smelling alcohol on Madden's breath. She also recalled an incident when Madden did not respond until after a second call to come to the hospital to see one of his patients. Sister Mary Jacob Yelcho elaborated, however, that she did not receive a complaint about the quality of patient care rendered by Madden, and found no indication patient care was affected in any way by his conduct.

The trial court granted summary judgment on the cause of action for negligent infliction of emotional distress, holding Strickland failed to meet the bystander liability requirements of *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 336 S.E. (2d) 465 (1985). The court also granted summary judgment on the outrage cause of action on the basis Strickland failed to prove Madden's conduct was reckless or intentional. The court cited as controlling *Hawkins v. Greene*, — S.C. —, 427 S.E. (2d) 692 (Ct. App. 1993), in which the pediatrician, operating under a mistaken belief that the baby's death was imminent, told Plaintiff her premature infant was dead when in fact the child was alive. The court also held the code Section prohibit-

---

[2] Stickland's father died of congestive heart failure five days later.

ing a doctor from attending a patient while under the influence of whiskey or drugs could not be relied upon to establish recklessness because it was inapplicable to the facts of this case where Madden did not treat Strickland. The court also found there was no evidence of agency upon which to hold the hospital responsible for Madden's actions, and no evidence to support a finding the hospital was at the time of this incident aware Madden was not qualified to practice medicine.

I.

On appeal, Strickland argues the trial court granted summary judgment on the first cause of action for negligent infliction of emotional distress upon an inapplicable principle of law. Strickland maintains her cause of action for negligent infliction of emotional distress is governed by the line of cases providing for recovery for emotional distress where the distress was inflicted directly to one's senses by a defendant's wrongful conduct. On the other hand, Madden argues a cause of action for the negligent infliction of emotional distress did not exist in South Carolina prior to its adoption in *Kinard* and, thus, the cause of action was properly analyzed under *Kinard*. We agree that this case does not involve bystander liability. We also agree with Madden that under the present status of the law a cause of action based solely on emotional trauma without proof of physical injury is limited to bystander recovery as announced in *Kinard*, 286 S.C. at 582, 336 S.E. (2d) at 467 n. 2.

In her amended complaint, Strickland alleges she suffered "severe bodily and mental injuries and damages."

These allegations were, of course, denied by Madden and the hospital. Nevertheless, to the extent she can prove her bodily injury was proximately caused by her emotional trauma she may recover for such trauma as an element of her damages. *See, Padgett v. Colonial Wholesale Dist. Co.*, 232 S.C. 593, 103 S.E. (2d) 265, 272 (1958); *Spaugh v. A.C.L. Ry. Co.*, 158 S.C. 25, 155 S.E. 145 (1930); F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* (1990) p. 481.

Madden argues, however, that Strickland has failed to raise a factual issue as to whether she sustained bodily injury in her evidence in opposition to his motion for summary judgment. This argument is allowed. Rule 56(e),

SCRCP provides that an adverse party may not rely on the mere allegations in his pleadings to withstand a summary judgment motion, but must set forth specific facts showing there is a genuine issue for trial. Nevertheless, a moving party who fails to demonstrate the absence of a genuine issue of material fact in support of his motion is not entitled to summary judgment even though his adversary does not come forward with controverting materials. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E. (2d) 460 (1990). We have reviewed the depositions and affidavits in the record and nowhere do they address the question of whether or not Strickland suffered bodily injuries. Accordingly, Madden has failed to support his motion for summary judgment as relates to the claim that Strickland's emotional distress is not compensable because she suffered no physical injuries.

## II.

Strickland also argues the court erred in granting summary judgment on her outrage cause of action because reasonable minds could properly conclude Madden's conduct was outrageous. We disagree.

To establish the tort of intentional infliction of emotional distress or outrage, a plaintiff must establish: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable person could be expected to endure it." *Holtzscheiter v. Thomson Newspapers, Inc.*, 306 S.C. 297, 411 S.E. (2d) 664 (1991).

Initially, however, the court determines whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons might differ is the question one for the jury. *Id.*

Upon a review of the record, we conclude the facts of this case do not raise a jury question as to whether Madden's con-

duct was sufficiently outrageous so as to support a cause of action for intentional infliction of emotional distress. We find *Hawkins*, — S.C. —, 427 S.E. (2d) 692, in which we affirmed summary judgment in favor of a defendant physician under similar circumstances, to be persuasive. In that case, the physician, in reporting the plaintiff's child had died, was acting under a "good faith belief that the baby was incapable of sustaining life on his own and that his death was imminent." *Id.*, 427 S.E. (2d) at 693. The evidence in this case viewed in the light most favorable to Strickland shows that Madden's conduct was also based on his good-faith belief that Strickland's father had died. Strickland testified the attending physician had just prior to the incident informed her that "your dad is leaving us" and she had become very upset over the imminency of his death. She acknowledged that she thought that Madden truly believed her father had passed away. She also acknowledged that Madden's subsequent statements were probably viewed by him as an effort to console her.

In arguing Madden's conduct was reckless,[3] Strickland relies on the assertion that Madden's alleged intoxication on the day in question violated S.C. Code Ann. § 40-47-190. She cites the case of *Morrow v. Evans*, 223 S.C. 288, 75 S.E. (2d) 598 (1953) for the proposition that violation of a causative statute provides evidence of recklessness. Madden argues, however, the cited Code Section is inapplicable. We agree. Section 40-47-190, which prohibits a doctor from attending a patient while under the influence of alcohol, was intended to regulate the duty flowing from a doctor to his patient. It has no application to the instant situation where Strickland alleges no breach of a duty to her as a patient of Madden. Therefore, even if we were to assume for appeal purposes that Madden was under the influence of alcohol on the day in question,[4] it would not be evidence of reckless conduct toward Strickland. *See generally Rayfield v. South Carolina Dept. of Corrections*, 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988) (plaintiff must show she is a member of the class of persons the statute is intended to protect).

---

[3] Which has been held to equate to willful or intentional conduct. *See Bussey v. Charleston and W.C. Ry. Co.*, 75 S.C. 116, 55 S.E. 163 (1906).

[4] Strickland testified she did not smell alcohol on Madden's breath that day.

In summary, clearly, Madden's conduct was highly inappropriate, but it does not rise to the level of outrage. The grant of summary judgment on the outrage cause of action is accordingly affirmed.

## III.

The trial court found that irrespective of Strickland's failure to demonstrate a genuine issue of fact as to her "substantive claims, the record is barren of any evidence to support a cause of action against Providence." Strickland argues the court erred in this ruling because there was evidence to support liability pursuant to Madden's apparent authority to act for the hospital. We disagree, and affirm the trial court.

Madden, in his uncontradicted affidavit, states he is a private practitioner and not an employee of the hospital. Strickland does not argue Madden was an employee of the hospital. *See Self v. Goodrich*, 300 S.C. 349, 354, 387 S.E. (2d) 713, 716 (Ct. App. 1989) (alleged negligence of physician who is not an agent or servant of hospital may not be imputed to hospital). Strickland argues instead that Madden had apparent authority to act for the hospital at the time he engaged in the allegedly tortious conduct.

Under an apparent authority theory, a hospital may be vicariously liable for negligent health care rendered by a physician who is not an employee of the hospital. *Shuler v. Tuomey Regional Medical Center, Inc.,* — S.C. —, 437 S.E. (2d) 128 (Ct. App. 1993). To recover under this theory, Strickland was required to establish: (1) the hospital consciously or impliedly represented Madden to be its agent; (2) there was reliance upon the representation; and (3) she detrimentally changed positions. *Id.*, 437 S.E. (2d) at 129-130.

Strickland maintains that because Madden had staff privileges, she considered him to be "in some was employed by Providence." Without determining whether this statement could be construed to establish a factual issue concerning the hospital's representation to Strickland, and without determining the effect of the alleged representation, there is nonetheless no evidence to support the remaining elements of reliance and change of position by Strickland. Strickland and two of her brothers had been or were at the time of the motion hear-

ing employees of Providence. Providence was the family's hospital and the family never even discussed the admission with the hospital, nor did she discuss with Dr. Gottlieb, the admitting doctor, which hospital to admit her father.[5] Furthermore, Strickland does not claim the family would have chosen a facility other than Providence had the members known of the non-employee status of its physicians. Finally, Strickland makes no claim she changed her position to her detriment based upon her reliance upon the hospital's alleged representation. As a result, Strickland fails to establish the required elements of apparent agency. We, accordingly, affirm the trial court's grant of summary judgment in favor of Providence.

## IV.

Finally, Strickland argues the court erred in granting summary judgment in favor of Providence because there exists a genuine issue of material fact as to whether the hospital was negligent in failing to withdraw Madden's staff privileges prior to this incident.

Negligent conduct becomes actionable only when it violates some specific legal duty owed to the plaintiff, and in the absence of a duty to prevent an injury, even foreseeability of that injury is not a sufficient basis for liability. *Foster v. Greenville County Medical Society*, 295 S.C. 190, 367 S.E. (2d) 468 (Ct. App. 1988).[6]

We note, however, other jurisdictions have applied the doctrine of corporate negligence to impose on hospitals a non-delegable duty to patients to carefully select and review the competency of physicians using their facilities. *See, e.g., Pedroza v. Bryant*, 101 Wash. (2d) 226, 677 P. (2d) 166 (1984) (State of Washington adopts doctrine of corporate negligence, citing

---

[5] Other jurisdictions have held only when the hospital furnishes the attending physician, in for example an emergency room setting, does apparent agency supply. *See, e.g., Brown v. Coastal Emergency Services, Inc.*, 181 Ga. App. 893, 354 S.E. (2d) 632, 636-37 (1987). Patients whose treatment is under the control of a privately retained physician are in a categorically different relationship with the hospital, which is merely providing hospital care, as opposed to patients whose attending physician is provided by the hospital. *Id.*

[6] In *Foster*, this Court concluded a medical society which was notified of a physician's possible abuse of alcohol did not have a duty to a subsequent patient of that physician who was allegedly injured because the physician was under the influence of alcohol. *Foster* did not address the liability of the hospital—an issue resolved pursuant to charitable immunity.

public's perception of and reliance on hospital as multifaceted health care facility, as well as hospital's superior position to monitor and control physician performance). Assuming South Carolina would likewise recognize the doctrine of corporate negligence, its application would nonetheless require a standard of care to be established, for example, pursuant to national hospital accreditation requirements or the hospital's own bylaws. *Id.*

Therefore, even if we recognized a duty owed by Providence to review the competence of its staff physicians, Strickland does not refer this Court to a standard of care by which we could determine if Providence breached that duty when it failed to react to the incidents cited. Strickland argues simply that a question of fact exists because nurses twice reported smelling alcohol on Madden's breath, and Madden failed to come to the hospital to see a patient until he received a second call from the hospital staff. There is no evidence Providence should have acted on this information to remove Madden's staff privileges. To the contrary, Sister Mary Jacob Yelcho testified she found no indication patient care had been affected.[7] Likewise, Strickland testified that she did not know whether Madden's alleged drinking affected his rendering care to his patients.

For the foregoing reasons, we reverse summary judgment on Strickland's claim against Madden for negligent infliction of emotional distress, but affirm summary judgment as to all other claims.

Affirmed in part, reversed in part and remanded.

---

[7] She also testified that a medical staff committee routinely reviewed patient records to monitor the level of care rendered.