654 S.E.2d 541

**Luba LYNCH, Respondent/Appellant**

v.

**TOYS "R" US–DELAWARE, INC., Appellant/Respondent.**

**No. 4316.**

Court of Appeals of South Carolina.

Heard March 7, 2007.

Decided Nov. 27, 2007.

608

610

Joel Collins, Jr. and Christian Stegmaier, both of Columbia, for Appellant/Respondent.

Brooks Roberts Fudenberg, of Charleston and Geoffrey H. Waggoner, of Mt. Pleasant, for Respondent/Appellant.

HEARN, C.J.:

In this cross appeal, Toys "R" Us and Luba Lynch appeal various issues arising from a jury verdict in favor of Lynch. Toys "R" Us argues the circuit court erred by: (1) granting a directed verdict to Lynch rather than to Toys "R" Us on the false imprisonment cause of action; (2) denying its directed verdict/judgment notwithstanding the verdict (JNOV) motion on the causes of action for malicious prosecution, slander, and outrage; (3) denying its motion for a new trial absolute based on juror misconduct and the thirteenth juror doctrine; and (4) denying its motion for a new trial *nisi remittitur*. Lynch argues the circuit court erred in requiring her to elect a remedy. We affirm in part and reverse in part.

## FACTS

On February 1, 2003, Lynch brought her mother, Tatiana Kotova, to a Babies "R" Us store in North Charleston. Kotova, a Russian National, was vacationing in the United States and this was her first visit to the baby superstore. While shopping, Lynch decided to go to the restroom and handed some baby cookies she had selected to Kotova, who put them in a black canvas tote bag.

A customer witnessed Kotova placing the items in the bag and reported the incident to a store employee. The employee went to the aisle and saw Kotova position a box into her bag, move around some other items, pull out what appeared to be a child's coat from the bag, and then push the coat down on top of the items. The employee called the store manager, Nrurka

Galarraga, to inform her that a customer saw "an older lady" putting merchandise inside a bag.[1]

The manager contacted the North Charleston Police Department and then approached Kotova. Noticing a piece of black garment covering some of the merchandise in the tote bag, the manager asked Kotova if she could search it. Although Kotova did not speak English and could not understand the manager's request, she permitted a search of the bag, wherein the manager discovered the boxes of cookies.

Lynch returned from the ladies' restroom to find Kotova in this encounter with the manager. The manager asked Lynch about the cookies in the tote bag, and Lynch responded that she and Kotova were "going to buy [them]." The manager then provided Lynch and Kotova a shopping basket, in which Lynch placed the cookies, and gave them permission to continue shopping. Lynch and Kotova later arrived at the checkout counter and purchased the cookies plus three additional items, for a total of $10.10.

Meanwhile, officers from the North Charleston Police Department had entered the store and were talking to the manager. The officers approached Lynch and Kotova as they were leaving the store, requested that they open their bag, and asked the manager, "where can we talk?" The manager then escorted Lynch, Kotova, and the officers into a nearby office for investigation. In the office, the manager told the officers that Lynch and Kotova had persisted in their efforts to conceal merchandise, even after being provided with a shopping basket. At trial, however, the manager testified that after giving the women a shopping basket they merely continued shopping and did nothing illegal or suspicious. The manager also told the officers that she had confronted Lynch and Kotova twice for concealing items. At trial, however, she recounted only one confrontation.

After the officers spoke with the parties, they gave the manager three options: (1) to put Lynch and Kotova on

---

1. The manager testified that the customer described the suspect as "an older lady;" however, the employee testified the customer reported that "some ladies" were putting merchandise in a bag.

trespass notice; (2) to sign an affidavit and pursue a warrant for shoplifting; or (3) to press charges and effectuate an immediate arrest. The manager elected the third option. The officers handcuffed Lynch and Kotova, escorted them through the busy store to the police car parked in front of the store, and transported them to jail.

When the women arrived at the jail, they were patted down, stripped of their belongings, and escorted to their cells. Lynch and Kotova spent ten hours in jail before being transported in handcuffs and shackles to a bond hearing. Two hours after the bond hearing, they were released. Lynch claimed she and Kotova could not sleep that night, and the next morning, Lynch went to church to seek comfort from her priest. Lynch also testified to experiencing nightmares since the arrest.

Lynch brought four causes of action against Toys "R" Us, alleging false imprisonment, malicious prosecution, slander, and outrage.[2] The case was tried before a jury, and at the close of the evidence, both Lynch and Toys "R" Us moved for directed verdicts. The circuit court denied all of Toys "R" Us's motions, but granted Lynch's motion for a directed verdict on false imprisonment. The circuit court submitted the remaining causes of action to the jury. The jury returned verdicts in favor of Lynch on all causes of action, and awarded $50,000 in actual damages and $250,000 in punitive damages on each.

Toys "R" Us filed post-trial motions for JNOV, new trial pursuant to the thirteenth juror doctrine, new trial absolute, new trial *nisi remittitur,* and new trial based on juror misconduct. The circuit court denied these motions. However, the circuit court required Lynch to elect one of the four awards as the basis for her recovery. Lynch elected to recover based on her malicious prosecution cause of action, and thus received $50,000 in actual damages and $250,000 in punitive damages for a combined total of $300,000. These cross-appeals followed.

---

2. Kotova returned to Russia after this incident and was not a party to this action.

## LAW/ANALYSIS

### I. Toys "R" Us's Appeal

#### A. Directed Verdict on False Imprisonment

Toys "R" Us contends the circuit court erred by granting a directed verdict to Lynch on her false imprisonment cause of action and by denying Toys "R" Us's motion for a directed verdict on the same issue. We believe the issue of false imprisonment was for the jury to decide.

When ruling on a directed verdict motion, the circuit court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). The appellate court must follow the same standard. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). "If more than one reasonable inference can be drawn or if the inferences to be drawn from the evidence are in doubt, the case should be submitted to the jury." *Chaney v. Burgess*, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965).

The essence of the tort of false imprisonment consists of depriving a person of his or her liberty without lawful justification. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 440, 629 S.E.2d 642, 651 (2006). To establish false imprisonment under South Carolina law, the plaintiff must show that the defendant restrained the plaintiff; the restraint was intentional; and the restraint was unlawful. *Id.*; *see also Gist v. Berkeley County Sheriff's Dep't*, 336 S.C. 611, 618, 521 S.E.2d 163, 167 (Ct.App. 1999).

Toys "R" Us raises the Merchant's Defense in regard to its actions. Section 16–13–140 of the South Carolina Code (2003) protects merchants and their employees who restrain or delay customers suspected of shoplifting if the customer was delayed in a reasonable manner and for a reasonable time to permit such investigation, and reasonable cause existed to believe that the customer delayed had committed the crime of shoplifting. As set out in the statute, "reasonable cause" is synonymous with "probable cause." S.C.Code § 16–13–140 (2003). Probable cause is defined as a

good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise. *Jones v. City of Columbia,* 301 S.C. 62, 65, 389 S.E.2d 662, 663 (1990). The determination of whether probable cause exists is ordinarily a jury question; however, it may be decided as a matter of law when the evidence yields but one conclusion. *Law,* 368 S.C. at 441, 629 S.E.2d at 651.

Lynch acknowledged at trial that the Merchant's Defense would apply to the initial confrontation between the manager and her. However, once the manager investigated the situation and resolved it by providing the women with a shopping basket and allowing them to continue to shop, Lynch argues the store had no right to again detain her once the police arrived. The circuit court judge agreed and found as a matter of law that Lynch was falsely imprisoned when she was restrained in the office.

After a thorough review of the record, we find there is evidence from which the jury could have determined Toys "R" Us continued to have probable cause to detain Lynch even after the initial confrontation. According to the manager's testimony, Lynch and her mother continued to act "very nervous" and went to different areas of the store "kind of hiding between fixtures." From this evidence, the jury could have found probable cause existed to restrain the women once the police arrived to determine whether additional merchandise had been concealed after the initial confrontation. On the other hand, it was also in the jury's province to find that Toys "R" Us no longer had probable cause once the women were allowed to continue shopping and ultimately paid for their merchandise. Accordingly, the determination of whether Lynch was falsely imprisoned should have been submitted to the jury.

### B. Directed Verdict/JNOV Motions on the Remaining Causes of Action

Toys "R" Us next contends the circuit court erred by denying its directed verdict motions on the remaining causes of action or, alternatively, by denying its motions for JNOV. In ruling on a motion for JNOV, as in ruling on a

motion for directed verdict, the circuit court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *McMillan v. Oconee Mem'l Hosp., Inc.,* 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006). The motion should be denied when either the evidence yields more than one inference or its inference is in doubt. *Id.* The circuit court's denial of such motions can only be reversed when there is no evidence to support the ruling or when the ruling is controlled by an error of law. *Id.*

### 1. Malicious Prosecution

■■■ As to its directed verdict and JNOV motions on the malicious prosecution cause of action, Toys "R" Us contends the circuit court should have found the store had probable cause as a matter of law to prosecute Lynch. We disagree.

■■■ In order to recover in an action for malicious prosecution, the plaintiff must show (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of such proceeding in the plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *Ruff v. Eckerds Drugs, Inc.,* 265 S.C. 563, 566, 220 S.E.2d 649, 651 (1975). An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause. *Law v. South Carolina Dep't of Corr.,* 368 S.C. 424, 435, 629 S.E.2d 642, 648 (2006).

■■■ Probable cause, which is a defense to an action for malicious prosecution, has been defined as "the existence of such facts or circumstances as would excite the belief of a reasonable mind, acting on facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Eckerds Drugs,* 265 S.C. at 568, 220 S.E.2d at 652. Thus, for probable cause, the facts must be regarded from the point of view of the prosecuting party; the question is not what the actual facts were, but what the prosecuting party honestly believed them to be. *Law,* 368 S.C. at 436, 629 S.E.2d at 649. Although the question of

whether probable cause exists is ordinarily a jury question, in an action for malicious prosecution, it may be decided as a matter of law when the evidence yields but one conclusion. *Id.*

In this case, evidence was presented to support Lynch's claim that Toys "R" Us lacked probable cause to believe she had committed shoplifting, and malice may be inferred from a lack of probable cause to institute the prosecution action. *Id.,* 368 S.C. at 437, 629 S.E.2d at 649. Further, there was evidence to show the charge was pursued by Toys "R" Us, it was terminated in Lynch's favor, and Lynch suffered damages as a result. Therefore, the circuit court properly submitted the issue of malicious prosecution to the jury.

## 2. Slander/Defamation

Toys "R" Us next contends the circuit court erred in denying its motions for directed verdict and JNOV on the slander cause of action. Specifically, Toys "R" Us argues the evidence reflected a reasonable inference that Lynch intended to deprive the store of merchandise; it was justified in calling the police; there was no testimony of publication to a third party; and the report of Lynch's activities to the officers was subject to a qualified privilege. We disagree.

Initially, we note that Toys "R" Us's assertion of a qualified privilege as a defense to defamation is not preserved for our review. Because qualified privilege was not raised to the circuit court, we refuse to consider it on appeal. *See, e.g., State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (holding that for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the circuit court).

The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 518, 506 S.E.2d 497, 506 (1998). Although slander is generally a spoken defamation, the supreme court has established that a defamatory insinuation

may not only be made by word, but also by actions or conduct. *Tyler v. Macks Stores of South Carolina, Inc.,* 275 S.C. 456, 458, 272 S.E.2d 633, 634 (1980).

Here, the record indicates that there was sufficient evidence from which a jury could have found that Toys "R" Us's words and conduct were defamatory. Evidence supports a claim that: (1) the manager and employee distorted the facts of Lynch's actions in telling the officers that Lynch and Kotova continued to steal items after confronted; (2) as a result of these statements, and at the direction of the manager and employee, the officers handcuffed Lynch and Mother and escorted them out of the store; (3) the officers put Lynch and Kotova into the backseat of their marked patrol car, which was parked in front of the store; and (4) Lynch suffered damage to her reputation.[3] Lynch testified that while handcuffed and walking out of the store, "everybody was looking at us." In addition, this conduct occurred at a time in which Toys "R" Us admits the store was "very busy."

Because a jury could have found that Toys "R" Us's statements concerning Lynch's behavior and its insistence on an immediate handcuffed arrest was a communication to both the officers and customers in the store that Lynch committed shoplifting, a jury question existed as to whether Toys "R" Us slandered Lynch.

### 3. Outrage

Toys "R" Us contends that the circuit court erred by finding, as a matter of law, that outrage existed in this case. We agree.

To establish an action for outrage, the plaintiff must show that: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his or her conduct; (2) the conduct was so extreme and atrocious as to exceed all possible bounds of decency and must be regarded as outrageous and utterly intolerable in civilized society; (3) the

---

3. Slander involving the accusation that the plaintiff committed a crime of moral turpitude is actionable *per se,* which carries a presumption of general damages. *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 511, 506 S.E.2d 497, 502 (1998).

actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Strickland v. Madden,* 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct.App.1994). Initially, the court determines whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and only if reasonable persons might differ should the question be one for the jury. *Id.*

Here, evidence indicates that Toys "R" Us's employees never specifically saw Lynch do anything illegal, that Lynch and her mother were arrested after having paid for the merchandise, and that the manager distorted the facts to the officers. We find these facts fall short of conduct "so atrocious that it exceeds all possible bounds of decency," as contemplated by the outrage cause of action. *Cf. Shipman v. Glenn,* 314 S.C. 327, 329, 443 S.E.2d 921, 922 (Ct.App.1994) (holding that supervisor's conduct in ridiculing speech of employee with cerebral palsy and threatening to fire her was *not* sufficiently outrageous to support claim of outrage). Further, there is a lack of evidence indicating Toys "R" Us's actions were outrageous to the extent they might be regarded as utterly intolerable in a civilized society. *But cf. McSwain v. Shei,* 304 S.C. 25, 29, 402 S.E.2d 890, 892 (1991) (holding that jury could find outrageous and intolerable conduct of an employer who forced employee to perform exercises in public which exposed her inability to control her bladder). Therefore, the circuit court erred in denying Toys "R" Us's motions for directed verdict and JNOV on the outrage cause of action.

## C. New Trial Based on Juror Misconduct

Toys "R" Us contends the circuit court erred by denying its motion for a new trial absolute based on juror misconduct. Toys "R" Us specifically contends that because a member of the jury lacked complete candor while responding under oath to *voir dire* and engaged in out-of-court investigation, its motion for a new trial should have been granted. We disagree.

### 1. Juror's Conduct During Voir Dire

Toys "R" Us contends that because a member of the jury did not reveal his alleged prior false arrest to the circuit court during *voir dire* the juror should have been disqualified from serving on the jury, and the court erred in denying its motion for a new trial absolute based on this juror misconduct. We disagree.

The granting of a new trial based on a juror's failure to honestly respond to the court's *voir dire* remains within the sound discretion of the circuit court. *Long v. Norris & Assocs., Ltd.*, 342 S.C. 561, 568, 538 S.E.2d 5, 9 (Ct.App.2000). The appellate court will not reverse a circuit court's decision to deny a new trial absolute motion absent an abuse of discretion. *Id.* Further, when allegations arise concerning a juror's failure to reveal information in response to *voir dire* questions, courts look to whether the concealment was intentional and consider the nature of the information concealed. *State v. Guillebeaux*, 362 S.C. 270, 274, 607 S.E.2d 99, 101 (Ct.App.2004). A new trial is warranted if the court finds that the juror intentionally concealed the information and the concealed information would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges. *Id.* However, a determination that a juror did not intentionally conceal the information ends the court's inquiry. *Id.*

In addition, as a policy matter, this court has refused to allow testimonies of jurors to impeach verdicts. *Barsh v. Chrysler Corp.*, 262 S.C. 129, 134, 203 S.E.2d 107, 109 (1974). Thus, upon an inquiry into the validity of a verdict, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any other juror's mind as influencing the juror to assent or dissent from the verdict. *State v. Zeigler*, 364 S.C. 94, 109, 610 S.E.2d 859, 867 (Ct.App.2005). A juror may only testify on the question of extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *Id.*

Here, the circuit court directed a verdict in favor of Lynch on the false imprisonment cause of action, and there is no

evidence that the juror's silence regarding his alleged false arrest would have affected the jury's deliberation on the remaining issues. Furthermore, there is no evidence the juror intentionally concealed his history of false arrest or that the juror's revelation had any influence on the other jurors' decisions. Accordingly, we find the circuit court did not abuse its discretion by denying Toys "R" Us's motion for a new trial absolute based on juror misconduct.

## 2. Out–of–Court Investigation

■ Toys "R" Us also contends that because the same member of the jury went to Lynch's place of employment during a lunch break and thereafter reported to the remaining jurors that "Lynch must be trustworthy to work in a store that sells such expensive items," the juror's out-of-court investigation was extrajudicial and prejudicial to the verdict. We disagree.

■ The determination of whether any person has a coercive effect on a jury for any reason is a matter addressed to the sound discretion of the trial judge. *Parker v. Evening Post Pub. Co.,* 317 S.C. 236, 247, 452 S.E.2d 640, 647 (Ct.App. 1994). The test is whether there is reason to believe outside influences affected the jury's verdict. *Id.* In such a determination, the court will look to relevant factors such as: (1) the number of jurors exposed; (2) the weight of the evidence properly before the jury; and (3) the likelihood that curative measures were effective in reducing the prejudice. *State v. Covington,* 343 S.C. 157, 164, 539 S.E.2d 67, 70 (Ct.App.2000).

To constitute reversible error, the casual viewing of a public place must have been calculated to influence, and most likely must have influenced, the verdict. 75B Am.Jur.2d *Trial* § 1550 (2006). However, even purposeful, unauthorized views of the premises made by a juror, in which the juror did nothing more than look at or examine the premises, is not automatically prejudicial. *Id.*

Here, Toys "R" Us again relied on the juror affidavits, which suggested that during a lunch break, one of the jurors visited Lynch's place of employment and reported to the remaining jurors that based on the upscale nature of the establishment, Lynch must be trustworthy. There was no

evidence that this influenced the verdict. Moreover, evidence had already been presented informing the jury that Lynch's place of employment was an upscale retail establishment. Thus, the juror's visit to the store did not provide the jury with any information that was not already before it. Accordingly, we find no abuse of discretion in the circuit court's denial of Toys "R" Us's motion for a new trial absolute based on juror misconduct.

### D. Thirteenth Juror Doctrine

Toys "R" Us contends that because Lynch failed to prove the elements necessary to recover under all four causes of actions for false imprisonment, slander, malicious prosecution, and outrage, the jury's verdict was not supported by evidence, and the circuit court erred by denying its motion for a new trial absolute based on the thirteenth juror doctrine. We disagree.

South Carolina's thirteenth juror doctrine allows the circuit court to grant a new trial absolute when the court finds the evidence does not justify the verdict. *Trivelas v. S.C. Dep't of Transp.*, 357 S.C. 545, 551, 593 S.E.2d 504, 507 (Ct.App.2004). The appellate court will not disturb a circuit court's order granting or denying a new trial upon the facts unless its decision is wholly unsupported by the evidence or the conclusion reached was controlled by an error of law. *Id.*

As explained previously, we find sufficient evidence existed to support submission of the false imprisonment, malicious prosecution, and slander causes of action to the jury. We have also addressed the circuit court's failure to direct a verdict on outrage above. Thus, we find the circuit court did not err in denying Toys "R" Us's motion for a new trial absolute based on the thirteenth juror doctrine.

### E. New Trial and Jury's Excessive Award

Toys "R" Us argues the circuit court erred by denying its motions for a new trial absolute or *nisi remittitur* based on the jury's excessive award of $50,000 in actual damages and $250,000 in punitive damages for each cause of action. Toys "R" Us specifically contends that because there was no testimony of Lynch's actual damages, and the reason-

able conduct of its employees preclude any award of punitive damages, it was error for the court to deny its motions for a new trial absolute or *nisi remittitur.* We disagree.

 The grant or denial of a new trial motion rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or the conclusions reached are controlled by an error of law. *Proctor v. Dep't of Health & Envtl. Control,* 368 S.C. 279, 320, 628 S.E.2d 496, 518 (Ct.App. 2006). The circuit court alone has the power to grant a new trial *nisi* when it finds the amount of the verdict to be merely inadequate or excessive. *Id.* If the amount of the verdict is grossly excessive or inadequate so as to be the result of passion, caprice, prejudice, or some other influence outside of the evidence, the circuit court must grant a new trial absolute. *Id.* When the denial of a motion for a new trial *nisi* is appealed, this court will reverse when the verdict is grossly inadequate or excessive, requiring the granting of a new trial absolute. However, compelling reasons must be given to justify invading the jury's province by granting a new trial. *Id.* at 320, 628 S.E.2d at 518.

Here, evidence demonstrates Lynch suffered damages for each specific cause of action. Lynch testified that she was arrested without justification; she was handcuffed and escorted to a police car in full view of customers; and she was jailed for ten hours, the combination of which also injured her reputation and led to her humiliation, sleeplessness, and emotional pain. We find this constitutes evidence of actual damages.

 Further, in South Carolina, punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. *Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 396, 134 S.E.2d 206, 210 (1964). They serve as a vindication of private rights when it is proved that such have been wantonly, willfully or maliciously violated. *Harris v. Burnside,* 261 S.C. 190, 196, 199 S.E.2d 65, 68 (1973).

Evidence was presented to show that Toys "R" Us wantonly, willfully, and maliciously fabricated and distorted the facts

of Lynch's actions to the officers and rejected the officers' alternatives to the immediate arrest of Lynch and her mother, all without ever observing any illegal action by Lynch. Such evidence was sufficient for the jury to award punitive damages.[4]

For the foregoing reasons, and because Toys "R" Us has not provided any compelling reasons to justify invading the jury's province by granting a new trial, we find the circuit court did not err in denying its motions for a new trial absolute or *nisi remittitur* based on the jury's award of damages.

## II. Lynch's Appeal: Election of Remedies

■ Lynch contends the circuit court erred in requiring her to elect one of four causes of action for which the jury awarded damages, when those causes of action were based on different facts. Because we have found the false imprisonment cause of action should have gone to the jury and the circuit court should have directed a verdict in favor of Toys "R" Us on the outrage cause of action, we need only decide whether Lynch should have had to elect between the remaining malicious prosecution and slander verdicts. We hold that she should not.

■ The doctrine of election of remedies requires a plaintiff to choose between different remedies allowed by law upon the same set of facts. *Jones v. Winn–Dixie,* 318 S.C. 171, 175, 456 S.E.2d 429, 431 (Ct.App.1995). Within this context, the facts refer to the defendant's wrongs or actions, so that when a plaintiff asserts only one primary wrong committed by the defendant, the plaintiff is entitled to only one recovery under the doctrine. *Id.* Therefore, the doctrine has no application when two separate causes of action exist based on different facts. *Id.* Application of the doctrine should be confined to cases in which double compensation to the plaintiff is threatened. *Tomlinson v. Mixon,* 367 S.C. 467, 470–471, 626 S.E.2d 43, 44–45 (2006).

---

4. Toys "R" Us does not challenge the award of punitive damages under *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991). Toys "R" Us only argues its conduct did not rise to the level to support an award of punitive damages.

In *Jones v. Winn–Dixie*, 318 S.C. 171, 456 S.E.2d 429 (Ct.App.1995), this court reversed the trial judge's reformation of the jury's verdict to require an election of remedies between a false imprisonment verdict and assault and battery verdict. In *Winn–Dixie*, Jones was suspected by a store manager of stealing shoe inserts from the store. *Id.* at 173, 456 S.E.2d at 431. The jury returned identical verdicts for each cause of action, including $25,000 in actual damages and $50,000 in punitive damages for each. In finding election improperly applied, this court reasoned that the plaintiff's action for false imprisonment was not based upon the same elements as his action for assault and battery, and that the plaintiff's injuries occurred at different times and resulted from separate and distinct actions on Winn–Dixie's part. *Id.*

As in *Winn–Dixie*, Lynch's causes of action were based upon different elements. The essence of a claim of for malicious prosecution is the lawful prosecution of an unwarranted criminal or civil proceeding against the plaintiff for malicious reasons, whereas slander consists of a false, defamatory statement communicated to a third party which results in injury to reputation. *See, e.g., Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 440, 629 S.E.2d 642, 651 (2006); *Williams v. Lancaster Co. School Dist.*, 369 S.C. 293, 302, 631 S.E.2d 286, 291–92 (Ct. App.2006).

Also, Lynch suffered distinct injuries specific to each alleged wrong committed by Toys "R" Us. Lynch spent ten hours in jail, needed to hire an attorney, and suffered nightmares as a result of the malicious prosecution. Lynch suffered injury to her reputation as a result of the slander. The malicious prosecution injury began when Lynch was arrested at the insistence of Toys "R" Us, and the slander occurred when Lynch was escorted, while handcuffed, out of the store and into the police car in full view of the public. Thus, the circuit court erred by requiring Lynch to elect between her remedies for malicious prosecution and slander.

## CONCLUSION

Accordingly, we find the circuit court erred by granting a directed verdict to Lynch on the false imprisonment cause of action. The circuit court did not err by denying Toys "R"

Us's motions for directed verdict and JNOV on the malicious prosecution and slander causes of action. Nor do we find the court erred in refusing to grant a new trial. However, the circuit court erred by denying Toys "R" Us's motion for directed verdict and JNOV on the outrage cause of action and in requiring Lynch to elect a remedy. Accordingly, the circuit court's decision is

**AFFIRMED IN PART and REVERSED IN PART.**

GOOLSBY and STILWELL, JJ., concur.