**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

K.S., a minor, by and through his Guardian ad Litem, James Seeger, Appellants,

v.

Richland School District Two, Respondent.

Appellate Case No. 2019-000951

———————

Appeal From Richland County
Jocelyn Newman, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-312
Heard April 5, 2022 – Filed July 27, 2022

———————

**AFFIRMED**

———————

Jacob John Modla, of The Law Offices of Jason E. Taylor, P.C., of Rock Hill, for Appellant.

Sheneka Shante Lodenquai, of Lewis Brisbois Bisgaard & Smith, of Atlanta, GA, and Thomas Kennedy Barlow, of Halligan Mahoney & Williams, of Columbia, for Respondent.

———————

**PER CURIAM:** James Seeger, acting as Guardian ad Litem for his son, K.S., appeals a circuit court order directing a verdict in favor of Richland School District Two (Richland Two). The lawsuit alleged Richland Two was grossly negligent in failing to promptly investigate and admonish K.S.'s first grade teacher (Teacher). There does not appear to be any dispute that Teacher directed inappropriate language at K.S. and that K.S. was psychologically harmed. The circuit court directed a verdict based on the reasoning that K.S.'s mental injuries were not recoverable absent a physical injury. We affirm, but for slightly different reasons.

**FACTS**

North Springs Elementary, located in Richland Two, assigned K.S. to Teacher's first grade class in 2011. K.S. stopped wanting to go to school shortly after the school year began. K.S. got upset at home in the mornings and cried at school throughout the day. K.S. said the crying was because he missed Seeger, but an incident in the school cafeteria some months after school began revealed K.S. was continually upset over interactions with Teacher.

A worker in the cafeteria witnessed Teacher "approach[ing K.S.] very harshly" after K.S. dropped his food tray. Teacher then grabbed K.S. "very forcefully by his arm" and walked him to a table after he got a new tray. This made K.S. cry. The cafeteria worker reported hearing Teacher say "I will give you something to cry for." Teacher left K.S. to eat alone at the table.

K.S. testified Teacher clawed him with her fingernails when she grabbed him, which hurt. Seeger testified he could not remember whether there were scratches on K.S.'s arm; did not remember including anything about fingernails, scratches, or cuts in emails he sent the school principal following the incident; and did not take any pictures. A forensic psychologist who provided expert testimony stated he assumed he would know if Teacher physically injured K.S. but had no knowledge of her doing so, nobody told him she did, and K.S.'s medical records did not indicate she did. Richland Two's Director of Human Resources testified nobody reported a physical injury to her.

When the Seegers learned what happened, they asked the principal to move K.S. to a new class. The principal did so immediately. K.S. cried on the walk to his new class because he saw Teacher in the hallway, but he stopped crying after he met his new teacher.

After changing classes, K.S. eventually shared Teacher had mistreated him before the cafeteria incident, including by confiscating encouraging notes from Seeger and allowing the other students in the class to form a "no crying club" that excluded K.S.

Richland Two opened an investigation into Teacher after the incident in the cafeteria. The investigation revealed two faculty members in the school's media center had previously reported Teacher to the principal after witnessing her treat students in a concerning manner. These reports occurred before the cafeteria incident described above.

The first report involved Teacher yelling at a child in front of all of the students in her class to pick a different book to read. Teacher exclaimed "there [was] no way" the child could read "one word" of the book, which made the child "sob."

The second report involved K.S. Teacher apparently told those in the media center to not give K.S. any special treatment or praise because he did not deserve anything for crying all day in her class. Then, when Teacher picked up her class from the media center and learned K.S. had behaved well, she reportedly said, "of course he was good for you, he has cried all day in my class." K.S. heard both sets of comments and was upset by them.

The principal apparently did not take any action after either of these reports. Seeger asserts this inaction was a violation of Richland Two's antibullying policy.

The parties tried the case for three days. During trial, Seeger proffered expert testimony from Dr. Alan McEvoy, an academic specializing in teacher bullying and school district responses. Dr. McEvoy's testimony described the national standard of care and his professional opinion that Richland Two breached the national standard as well as its own policy, which was consistent with the national standard. The circuit court excluded the testimony, deeming it cumulative with other testimony about the school's antibullying policy.

Richland Two moved for a directed verdict at the close of trial. There was ample testimony throughout trial about the negative impact K.S.'s experience in Teacher's class had on his mental health. K.S. suffers from anxiety, depression, angry outbursts, and trouble sleeping to this day (he is now in high school). He has seen a number of therapists and a psychologist, takes prescription medication, and had to go to tutoring because the experience affected his performance at school.

As we mentioned at the beginning, the circuit court granted Richland Two's motion for a directed verdict because it found the damages were "purely emotional

damages" that were not brought about by bodily injury and did not result in bodily injury.

## ISSUES

1. Did the circuit court err in directing a verdict in favor of Richland Two because K.S. suffered purely emotional injuries?

2. Does the Safe School Climate Act waive the South Carolina Tort Claims Act?

3. Did the circuit court err in excluding the testimony of Seeger's expert?

## STANDARD OF REVIEW

"In an appeal from the grant of a directed verdict, [an appellate court] must, like the trial court . . . , view the evidence in a light most favorable to the non-movant . . . ." *Miller v. FerrellGas, L.P., Inc.*, 392 S.C. 295, 297, 709 S.E.2d 616, 617 (2011). "When viewed in that light, if there is any evidence that may be reasonably construed as creating a question of fact, the motion must be denied and the matter submitted to the jury." *Id.* "[T]his rule does not authorize submission of speculative, theoretical and hypothetical views to the jury. We have repeatedly recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court." *Hanahan v. Simpson*, 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997), *superseded on other grounds by statute*, S.C. Code Ann. § 15-36-10(C)(1) (Supp. 2012), *as recognized in Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 758 S.E.2d 483 (2014).

## ANALYSIS

The core dispute in this case is whether Seeger's claim satisfies the standard to prove a claim for damages that are purely emotional (put differently, purely mental) in nature. Seeger argues all that is required to survive a directed verdict in a case for mental health damages is some evidence of a physical manifestation of those damages. To that end, he contends K.S.'s anxiety, depression, angry outbursts, and trouble sleeping are sufficient physical manifestations.

Richland Two argues directing a verdict was proper because Seeger's claim is a claim for negligent infliction of emotional distress, that plaintiffs in South Carolina can only recover for negligent infliction of emotional distress in two situations, and that neither situation applies.

As far as we have been able to discover, South Carolina currently recognizes negligent infliction of emotional distress in three contexts. First, South Carolina recognizes negligent infliction of emotional distress in the "bystander" context— when a plaintiff observes a defendant's negligence cause the death or serious injury of a relative. *See Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 582-83, 336 S.E.2d 465, 467 (1985) (finding a mother who witnessed the severe injury of her daughter could recover damages for emotional distress). Because K.S. did not observe the death or serious injury of a relative, "bystander" recovery is irrelevant.

Second, South Carolina recognizes actions for negligent infliction of emotional distress when a plaintiff suffers emotional distress in addition to physical injuries. *See Boan v. Blackwell*, 343 S.C. 498, 502, 541 S.E.2d 242, 244 (2001) (stating a plaintiff may recover for mental anguish that accompanies a physical injury).

Teacher's grabbing K.S.'s arm in the cafeteria is undoubtedly evidence of physical contact. Still, the evidence does not demonstrate the grab physically harmed K.S. K.S. testified that it hurt when Teacher grabbed him, but Seeger testified he could not remember whether there were scratches on K.S.'s arm; did not remember including anything about fingernails, scratches, or cuts in emails he sent the school principal; and did not take any pictures. A forensic psychologist testified he assumed he would know if Teacher physically injured K.S. but had no knowledge of her doing so and that K.S.'s medical records did not indicate physical injury. Richland Two's Director of Human Resources testified nobody reported a physical injury to her. We therefore agree that there is no evidence K.S.'s mental anguish accompanied a physical injury.

The third species of negligent infliction of emotional distress claims applies when emotional trauma proximately causes bodily injury. *See Padgett v. Colonial Wholesale Distrib. Co.*, 232 S.C. 593, 608, 103 S.E.2d 265, 272 (1958) ("If the respondent's bodily injury was proximately caused by the shock, fright and emotional upset as a result of the negligence and willfulness of the appellant, he was entitled to recover such damages as would compensate him for the injury so sustained."); *Strickland v. Madden*, 323 S.C. 63, 67, 448 S.E.2d 581, 584 (Ct. App. 1994) ("[T]o the extent [the plaintiff] can prove her bodily injury was proximately caused by her emotional trauma she may recover for such trauma . . . ."). These authorities appear to be Seeger's chief support for why he believes the circuit court's decision to direct a verdict was incorrect.

We do not wish to diminish—in any way—the negative effects K.S. undoubtedly experienced. Even so, we respectfully disagree with the argument that the evidence in this case meets the standard set by these precedents. Some cases suggest suffering

from a nervous breakdown as a result of negligence would support a verdict, even if no other injury was sustained. *See, e.g., Spaugh v. A. Coast Line R. Co.*, 158 S.C. 25, 30, 155 S.E. 145, 147 (1930) ("Suffering from a nervous breakdown, as a result of defendant's negligence, would support a verdict for the plaintiff, independent of any other injury she sustained."); *see also Turner v. A B C Jalousie Co. of N.C.*, 251 S.C. 92, 96, 160 S.E.2d 528, 530 (1968) ("[Respondent] specifically alleges that as a result of the conduct of the appellant 'her nervous system collapsed'. Such is an allegation of physical or bodily injury."). But one of those same cases counsels that if a plaintiff whose sole damage is a nervous breakdown is going to prevail, the defendant's conduct must be exceedingly bad such that severe emotional distress would be expected to follow in a reasonable person. *See. e.g.*, *Turner*, 251 S.C. at 97-98, 160 S.E.2d at 530 (Lewis, J. concurring) ("I construe the opinion of the Chief Justice to hold that the complaint states a cause of action for severe emotional distress resulting in physical or bodily injury, recklessly, willfully and wantonly caused by the alleged extreme and outrageous conduct of the agent of defendant in using, under the circumstances, vile, profane and abusive language towards plaintiff."). Our cases on this type of claim are dated, but this view aligns with more modern authority in other jurisdictions. *See, e.g., Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (abandoning the physical manifestation rule and applying the general negligence approach but only for emotional injuries so serious or severe a reasonable person would not be able to cope with the stress the circumstances caused). We think these formulations of the rule are correct. Nobody questions that Teacher's conduct was inappropriate and improper. It nevertheless does not reach the extreme level required, even if we view that conduct in the light most favorable to Seeger.

This conclusion controls the case and makes it unnecessary to address Seeger's other issues. Seeger argues he only had to prove negligence by a preponderance of the evidence rather than gross negligence because the Safe School Climate Act waives Richland Two's sovereign immunity under the Tort Claims Act. However, and as we have described, Seeger cannot meet the bar of proving a negligent infliction of emotional distress claim. Seeger also argues the circuit court should not have excluded the testimony of his expert about the standard of care, but because Seeger cannot prove damages for the reasons given above, the expert's testimony would not have made a difference. On both points, the fact Seeger lacks a cause of action for negligent infliction of emotional distress is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court does not need to review remaining issues when its determination of a prior issue is dispositive).

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**